PEOPLE v MCKINNEY

Docket No. 238111. Submitted June 3, 2003, at Grand Rapids. Decided
June 17, 2003, approved for publication August 19, 2003, at 9:00 A.M.
Leave to appeal denied, 469 Mich ___.

Tanea R. McKinney was convicted by a jury trial in the Kent Circuit
Court, Donald A. Johnston, J., of various offenses, including pos-
session of over 650 grams of cocaine, MCL 333.7403(2)(a)(i), and
possession with intent to deliver over 650 grams of cocaine, MCL
333.7401(2)(a)(i). The defendant's convictions arose after a search
warrant was executed at the apartment she shared with her code-
fendant boyfriend and large quantities of cocaine, drug parapherna-
lia, and cash were discovered. The defendant appealed, arguing
that she was denied her constitutional right to an impartial jury
drawn from a fair-cross section of the community, that the trial
court erred in denying her request for an instruction on duress, and
that there was insufficient evidence to convict her of the charges of
possession and possession with intent to deliver cocaine.

The Court of Appeals *held*:

1. To properly preserve a challenge to the jury array, a party
must raise the issue before the jury is empanelled and sworn. The
record reveals that the defendant did not object to the composition
of her jury array. Furthermore, there is no evidence in the record to
support her argument that African-Americans were systematically
excluded from the jury venires. Consequently, there is no way of
conducting a meaningful review of the defendant's allegations on
appeal. Notably, a finding that the defendant failed to properly pre-
serve her challenge to the jury array is not the same as endorsing
improper jury selection processes.

2. The trial court did not err in refusing to give an instruction
regarding duress because the defendant denied ever participating
in the sale or packaging of narcotics. In other words, the defendant
denied committing any crime. Consistent with Supreme Court pre-
cedent, this testimony did not meet the defendant's burden of com-
ing forward with "some evidence that the defendant did the act and
chose to do so out of a reasonable and actual belief that it was the
lesser of two evils." *People v Lemons*, 454 Mich 234 (1997).

3. The element of possession requires a showing of dominion or
right of control over the drug with knowledge of its presence and

character. The evidence revealed that the defendant told the police that everything they needed to find was in the bedroom she shared with her codefendant boyfriend, that several large bags of cocaine were found in a dresser containing women's clothes, and that one of the bags had the defendant's fingerprint on it. Finally, there was other testimony that the defendant admitted responsibility for the large amount of cash found in the apartment. There was sufficient evidence presented at trial from which a rational trier of fact could conclude that the defendant was guilty of possession and possession with intent to deliver cocaine.

Affirmed.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *William A. Forsyth*, Prosecuting Attorney, *Timothy K. McMorrow*, Chief Appellate Attorney, and *T. Lynn Hopkins*, Assistant Prosecuting Attorney, for the people.

*Alfred Millstein* for the defendant.

Before: SMOLENSKI, P.J., and COOPER and FORT HOOD, JJ.

PER CURIAM. Following a jury trial, defendant Tanea R. McKinney was convicted of possession of over 650 grams of cocaine, MCL 333.7403(2)(a)(i); possession with intent to deliver over 650 grams of cocaine, MCL 333.7401(2)(a)(i); being a felon in possession of a firearm, MCL 750.224f; maintaining a drug house, MCL 333.7405(d); and possession of a firearm during the commission of a felony, MCL 750.227b. The trial court sentenced defendant as a second-offense habitual offender, MCL 769.10, and as a second-offense drug offender, MCL 333.7413(2). She received concurrent terms of 20 to 50 years' imprisonment for her possession and possession with intent to deliver cocaine offenses; 2 to 7 years' imprisonment for being a felon in possession of a firearm; and 1½ to 3 years' imprisonment for maintaining a drug house. Defendant was

also given a consecutive two-year sentence for her felony-firearm conviction. She appeals as of right. We affirm.

Defendant's convictions resulted from evidence discovered on March 16, 2000, when members of the vice unit of the Grand Rapids police department executed a search warrant at 457 Howard in the city of Grand Rapids. Defendant shared this upstairs apartment with numerous individuals, including her boyfriend of five years, codefendant John Holman.[1] There were two bedrooms in the apartment and defendant admitted that she shared the southeast bedroom with Mr. Holman.

When the police entered defendant's apartment, they confiscated over 650 grams of cocaine. In the southeast bedroom, the police discovered two large bags of cocaine inside a dresser that contained women's clothing.[2] The police also observed a plate, with a large piece of crack cocaine and a razor blade, sitting atop the same dresser. Another dresser in the southeast bedroom contained $2,400 in cash. Further inspection of the bedroom revealed an open box of sandwich bags, baking soda, and two loaded guns. At trial, Officer Peter Gavalis explained that baking soda was commonly used to increase the quantity of cocaine. On a table in the hallway, the police also found two small rocks of crack cocaine on a digital scale.

Defendant's mother, Diane Henderson, was sitting in the living room with defendant's two children when

---

[1] John Holman was the only suspect specified in the search warrant.

[2] A latent fingerprint examiner identified a fingerprint on one of these bags as belonging to defendant.

Officer Jon Wu brought his police dog[3] through the area. The dog alerted the officer to a black purse that was located next to Ms. Henderson. Officer Wu testified that he discovered three bundles of money inside the purse totaling $3,000. According to Officer Wu, defendant informed him that she had just put that money in the purse. Officer Wu testified that he understood this statement to be an admission from defendant that the money belonged to her. However, neither defendant nor Ms. Henderson recalled defendant making such a statement. Rather, Ms. Henderson testified that she placed the money in her purse after observing Mr. Holman hide it under the couch earlier that evening. Officer Wu also claimed that defendant indicated to the police that everything they needed to find was in the southeast bedroom.

Defendant testified that she was aware that there was marijuana in the apartment. However, she denied seeing any other drugs until shortly before the raid when she discovered the one small bag of cocaine. Indeed, defendant expressly denied ever assisting Mr. Holman in selling or packaging cocaine. She further asserted that she did not make a statement to the police admitting responsibility or ownership of all the contents in her apartment.

I. JURY ARRAY

Defendant initially contends that she was denied her constitutional right to an impartial jury drawn from a fair cross-section of the community. Specifi-

---

[3] We note that Officer Wu's dog is specially trained to locate heroin, cocaine, marijuana, and methamphetamine. When Officer Wu's dog detects an odor of narcotics, the dog is trained to sit next to that object.

cally, defendant claims that African-Americans were systemically excluded from Kent County's jury venires when her jury trial was conducted. US Const, Am VI; Const 1963, art 1, § 14. In support of her argument, and in an attempt to expand the record, defendant cites several newspaper articles chronicling a problem with Kent County's jury selection system.[4]

Questions concerning the systemic exclusion of minorities in jury venires are generally reviewed de novo. *People v Hubbard (After Remand)*, 217 Mich App 459, 472; 552 NW2d 493 (1996). "A criminal defendant is entitled to an impartial jury drawn from a fair cross section of the community." *Id.*, citing *Taylor v Louisiana*, 419 US 522, 526-531; 95 S Ct 692; 42 L Ed 2d 690 (1975). To establish a prima facie violation of the fair cross-section requirement, the defendant bears the burden of proving "that a distinctive group was underrepresented in his venire or jury pool, and that the underrepresentation was the result of systematic exclusion of the group from the jury selection process." *People v Smith*, 463 Mich 199, 203; 615 NW2d 1 (2000), citing *Duren v Missouri*, 439 US 357, 364; 99 S Ct 664; 58 L Ed 2d 579 (1979).

However, to properly preserve a challenge to the jury array, a party must raise this issue before the jury is empanelled and sworn. *People v Dixon*, 217 Mich App 400, 404; 552 NW2d 663 (1996). A review of the record in this case indicates that defendant failed to object to the composition of her jury array. Further, there is no evidence in the lower court record to support defendant's argument. Consequently, we have

---

[4] This Court may not take judicial notice of newspaper articles because they constitute inadmissible hearsay. See *Baker v General Motors Corp (After Remand)*, 420 Mich 463, 511; 363 NW2d 602 (1984).

no means of conducting a meaningful review of defendant's allegations on appeal. We note that another panel of this Court previously denied defendant's request to remand to the trial court for an evidentiary hearing. *People v McKinney*, unpublished order of the Court of Appeals, entered October 16, 2002 (Docket No. 238111).

Nevertheless, we understand the difficulties that counsel would have faced in objecting to what was, according to defendant, a longstanding problem. Moreover, this opinion should in no way be viewed as approving of, or minimizing, any improper jury selection practices that may have occurred in this case. Similar to Justice CAVANAGH's rationale in his concurring opinion in *Smith, supra* at 228, a finding that defendant failed to properly preserve her jury array issue is not the same as endorsing improper jury selection practices.

## II. JURY INSTRUCTIONS

Defendant next argues that the trial court erroneously refused her request for an instruction on the defense of duress. We disagree. This Court reviews de novo a defendant's claim of instructional error. *Hubbard, supra* at 487.

Jury instructions are reviewed in their entirety to determine if error requiring reversal occurred. *People v Aldrich*, 246 Mich App 101, 124; 631 NW2d 67 (2001). It is the function of the trial court to clearly present the case to the jury and instruct on the applicable law. *People v Katt*, 248 Mich App 282, 310; 639 NW2d 815 (2001). Accordingly, jury instructions must include all the elements of the charged offenses and

any material issues, defenses, and theories that are supported by the evidence. *People v Canales*, 243 Mich App 571, 574; 624 NW2d 439 (2000). "The determination whether a jury instruction is applicable to the facts of the case lies within the sound discretion of the trial court." *People v Ho*, 231 Mich App 178, 189; 585 NW2d 357 (1998).

A defendant's request for a jury instruction on a theory or defense must be granted if supported by the evidence. *People v Riddle*, 467 Mich 116, 124; 649 NW2d 30 (2002). "However, if an applicable instruction was not given, the defendant bears the burden of establishing that the trial court's failure to give the requested instruction resulted in a miscarriage of justice." *Id*. Reversal for failure to provide a jury instruction is unwarranted unless it appears that it is more probable than not that the error was outcome determinative. *Id*. at 124-125.

Defendant's request for a duress instruction in this case is based on allegations that Mr. Holman was abusive. She claimed that the only reason she continued to live with Mr. Holman was because she feared his reprisals. Counsel for defendant argued that a duress instruction was necessary to rebut the inference that defendant must have been helping Mr. Holman given her presence in the apartment and the amount of drugs discovered. Nevertheless, after hearing defendant's testimony the trial court declined to provide the duress instruction. According to the trial court:

> Duress is a defense to the commission of a crime. "I committed the crime, but I was forced to commit the crime." Duress is an excuse for the commission of a crime, it's a societal decision that even though a crime is committed, we're going to excuse the defendant because the defendant

had no choice. It's either duress, and they also use necessity under certain circumstances. Your client did not commit any crime, if you believe her testimony. She discovered the cocaine either the day before or the day of the raid.

To merit an instruction on the affirmative defense of duress, a defendant must establish a prima facie case of the elements of duress. *People v Lemons*, 454 Mich 234, 248-249; 562 NW2d 447 (1997). Specifically, a defendant must present sufficient evidence from which a jury could find that:

A) The threatening conduct was sufficient to create in the mind of a reasonable person the fear of death or serious bodily harm;

B) The conduct in fact caused such fear of death or serious bodily harm in the mind of the defendant;

C) The fear or duress was operating upon the mind of the defendant at the time of the alleged act; and

D) The defendant committed the act to avoid the threatened harm. [*Id.* at 247.]

In *Lemons, supra*, the Supreme Court affirmed the trial court's refusal to give an instruction on duress where the defendant denied that any crime took place. As noted by *Lemons, supra* at 249, such testimony does not "meet the burden on the defense to come forward with some evidence that the defendant did the act and chose to do so out of a reasonable and actual belief that it was the lesser of two evils." In the instant case, defendant expressly denied *ever* assisting Mr. Holman in the sale or packaging of narcotics. In fact, she denied seeing any cocaine in her apartment, aside from the one bag, before the police executed the search warrant. We further note that the jury was instructed that defendant's mere knowledge of the presence of cocaine in the apartment was

insufficient to establish possession. Accordingly, the trial court acted within its discretion when it declined to give the requested duress instruction. See *id.*[5]

### III. SUFFICIENCY OF THE EVIDENCE

Defendant ultimately claims that there was insufficient evidence to show that she either knowingly possessed cocaine or intended to deliver it. According to defendant, the only evidence connecting her with the cocaine in this case was her presence in the apartment. We disagree.

In sufficiency of the evidence claims, this Court reviews the evidence in the light most favorable to the prosecution and determines whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Johnson*, 460 Mich 720, 723; 597 NW2d 73 (1999). However, we will not interfere with the jury's role of determining the weight of the evidence or the credibility of witnesses. *People v Avant*, 235 Mich App 499, 506; 597 NW2d 864 (1999). "[C]ircumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Lee*, 243 Mich App 163, 167-168; 622 NW2d 71 (2000).

The element of possession in defendant's charges requires a showing of " 'dominion or right of control over the drug with knowledge of its presence and character.' " *People v Nunez*, 242 Mich App 610, 615;

---

[5] We note that defendant also argues that she should be permitted to advance inconsistent defenses. *Lemons, supra* at 245. "However, a trial court need not instruct the jury on inconsistent theories when neither party produces a modicum of evidence in support of a particular theory." *People v Heflin*, 434 Mich 482, 504; 456 NW2d 10 (1990).

619 NW2d 550 (2000), quoting *People v Maliskey*, 77 Mich App 444, 453; 258 NW2d 512 (1977). We note that "[p]ossession may be either actual or constructive, and may be joint as well as exclusive." *People v Fetterley*, 229 Mich App 511, 515; 583 NW2d 199 (1998). The essential issue is whether the defendant exercised dominion or control over the substance. *Id.*

The evidence indicates that defendant shared the southeast bedroom with Mr. Holman and that she informed the police that everything they needed to find was in that bedroom. After searching this room, the police recovered several large bags of cocaine from a dresser containing women's clothing. We also note that defendant's fingerprint was found on one of these bags. Moreover, the testimony indicates that there was a plate of crack cocaine on the dresser and other drug paraphernalia located throughout the bedroom. Further, Officer Wu testified that defendant claimed responsibility for the $3,000 that was discovered by his police dog. On this record, a reasonable finder of fact could conclude that defendant was guilty of possession and possession with intent to deliver.

Affirmed.