# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

V

DARELL CHANCELLOR,

Defendant-Appellant.

UNPUBLISHED
December 4, 2014

No. 314437
Wayne Circuit Court
LC No. 12-004974-FH

Before: MURRAY, P.J., and JANSEN and SHAPIRO, JJ.

SHAPIRO, J. (*dissenting*).

I respectfully dissent. This case concerns a bench trial with highly controverted proofs. The majority reviews the most inculpatory proofs, and based upon them, concludes that there was sufficient evidence to convict. I would agree with the majority's conclusion if the trial court had made factual findings adopting those proofs or even if it provided a clear indication that it based defendant's conviction upon them even without formal fact-finding. However, the trial court did not do so and so it cannot be determined whether defendant's conviction was based on the facts referenced by the majority or by a conclusion on the part of the trial court that defendant could be convicted of possession of cocaine solely on the basis of a finding that he resided in the relevant house, a finding which by itself would not be sufficient. Accordingly, I would reverse defendant's conviction and remand for a new trial.

## I. FACTS

Defendant was charged with both possession and possession with intent to deliver 450 to 999 grams of cocaine, MCL 333.7401(2)(a)(*ii*) (possession with intent to deliver); MCL 333.7403(2)(a)(*ii*) (possession), and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. After a bench trial, the court acquitted defendant of possession with intent to deliver and felony-firearm. However, the court convicted defendant of possession. Defendant was sentenced as a fourth habitual offender, MCL 769.12, to the statutory 30-year maximum term and to a minimum term of 170 months, the lowest term within the relevant sentencing guidelines range.

The charges arose out of a search of a home on 32nd Street in Detroit at approximately 5:30 p.m. on November 2, 2011. Three police officers and defendant's parole officer testified in the prosecution's case-in-chief. Defendant testified on his own behalf.

-1-

Officer Geelhood testified that on October 31, 2011, he received information that heroin was being sold from the 32nd Street house. The following evening, he watched the house and within 30 minutes saw three people independently go to the front door, have a conversation with a black man (who he later identified as the "seller" in his search warrant affidavit), and make purchases of what he believed to be heroin. He testified that he observed these activities from about 400 feet away, using binoculars, and although it was dark, there was a light on at the front of the house. Geelhood testified, consistent with the description he set forth in the search warrant affidavit, that the seller he saw during this period of observation was a black male, 5'7" to 5'8" tall, 170-180 pounds, and of slim build. He also testified that the man was not wearing glasses.

Geelhood testified that he was "absolutely certain" that the man he observed was defendant. However, he conceded that defendant was 5'11" tall and of "heavy build," weighing, in his estimation, between 210 and 220 pounds. Given the clear divergence between his description of the seller and defendant's actual appearance, Geelhood was asked if his description of the seller in the affidavit could have been mistaken. He denied any error and reaffirmed his description of the seller as a man as much as 4 inches shorter and up to 50 pounds lighter than defendant appeared to him at trial.

All three officers testified that defendant was not present at the 32nd Street house when the warrant was executed. Present at the home were defendant's mother and a black male in his 50s, about 5'9" tall and of slim build, weighing approximately 170 pounds. This individual told the officers that he was working on the house, but that he did not live there. He was apparently not pursued as a suspect.

The officers testified that the 32nd Street house had at least four bedrooms – two on the first floor and two on the second. There were kitchens on both the first and second floors, though the second floor could only be accessed by stairs from the first floor, i.e., there was no separate entrance or private stairs to the second floor. There was a table in the upstairs kitchen. Beneath the table was a clothes hamper in which the officers found men's clothing, the large quantity of cocaine at issue, and two guns. None of the clothes were offered as evidence and the officers did not further describe the type or size of the clothing.

One of the officers testified that he found an envelope on the table in the upstairs kitchen that had been opened and contained a letter from the State of Michigan addressed to defendant at the 32nd Street address. The officer testified that prior to the discovery of this letter they did not have a name associated with the suspected seller. An officer asked defendant's mother where they could find defendant and she provided the officers with a different address. An officer testified that he went to that address and observed a car in the driveway that had been seen at the 32nd Street house the night before during surveillance. He ran the license plate and learned that the vehicle belonged to defendant. When defendant was later arrested, he was not in possession of any drugs.

Defendant's parole officer also testified. She stated that she had met with defendant on two occasions at the 32nd Street address and that he told her that he lived there.

Defendant testified on his own behalf and stated that neither the cocaine nor the guns found at the 32nd Street house belonged to him. He testified that at the time of trial he was 30 years old, 5'11" tall, and weighed 250 pounds. He testified that on the date of the search, he weighed 245 pounds. He testified that he always wore the glasses he was wearing in the courtroom and could not function without them. He testified that he wore size 44 waist pants and it was shown that the shirt he was wearing was 5XL, though he conceded that the clothes were baggy.

The prosecution speculated in argument that defendant probably gained weight (apparently 40-60 lbs) due to eating jail food while awaiting trial.[1] In addition, the prosecution introduced a Secretary of State photo of defendant's head and shoulders taken in January 2011 in which he was not wearing glasses. Geelhood testified that, in his opinion, defendant appeared thinner in the photo than he did at trial.

Defendant testified that he lived on Robson Street with his wife and son at the time of the search and kept all of his clothes there. He testified that he had lived at his mother's home on 32nd Street when he was initially released from prison in November 2010, i.e., when he gave that address to the parole officer. He stated that after moving to the Robson address, he continued to represent to his parole officer that he lived at the 32nd Street house. He testified that he misrepresented his address to the parole officer because his workplace was near his mother's home and if he reported the change in address, he would have been reassigned to a parole office located a greater distance away. He testified that on the date of the search, the persons living at the 32nd Street house were his mother, his brother, his sister, and a male cousin. He described his brother as 37 years old, 5'9" tall, and weighing approximately 165-170 pounds. He described his cousin as 34 years old. He stated that another person, the man present at the house at the time of the search, was his mother's boyfriend, who lived in the house.

After hearing proofs and argument, the trial court delivered its findings and verdict. It found defendant guilty of constructively possessing the cocaine, but not acquitted him of possession with intent to deliver and felony-firearm.

## II. ANALYSIS

Where a criminal case is bench tried, it is not sufficient for the court to simply state a verdict. Under MCR 6.403, "[t]he court must find the facts specially . . . . The court must state its findings and conclusions on the record or in a written opinion made part of the record." "[I]n criminal cases . . . a judge who sits without a jury is obligated to articulate the reasons for his decision in findings of fact. Findings of fact in a nonjury case serve a function paralleling the judge's charge in a jury case, that of revealing the law applied by the fact finder." *People v Jackson*, 390 Mich 621, 627; 212 NW2d 918 (1973). In other words, the requirement that the trial court make factual findings is not to require that the court resolve each and every factual

---

[1] Contrary to this argument, when defendant was admitted to the jail, a "detainee input sheet" was prepared that listed defendant's weight at 240 lbs. Admittedly, this document, while in the lower court record, was not admitted into evidence.

dispute, but to assure that the court correctly applied the law. See *People v Armstrong*, 175 Mich App 181, 184; 437 NW2d 343 (1989). Further, a trial judge sitting as fact-finder in a bench trial is not permitted to reach "compromise" verdicts. *Wayne Co Prosecutor v Detroit Recorder's Court Judge*, 177 Mich App 762, 765; 442 NW2d 771 (1989), citing *People v Burgess*, 419 Mich 305, 310-311; 353 NW2d 444 (1984).

In this case, the trial court's findings were inadequate to determine the factual basis for defendant's conviction and to determine whether the trial court properly applied the law in reaching its verdict.

The trial court's factual findings and conclusions of law as to the relevant charge read in their entirety as follows:

> [O]n Count II, I do find that there was sufficient basis to show proof beyond a reasonable doubt that the defendant did in fact possess the cocaine that was found in the laundry hamper and that it did exceed 450 grams or more; that the proof of residence was established beyond a reasonable doubt for [defendant]; that the fact that the mail was found in the upstairs location indicates to me that the residence was upstairs and that in fact there is a sufficient basis for me to find constructive possession by [defendant] of that cocaine, and I find him guilty of Count II, controlled substance possession, cocaine.

It is reasonable to infer from the trial court's findings that the conviction may have been based solely on the court's conclusion that defendant resided at the 32nd Street house. However, "[i]t is well established that a person's presence, by itself, at a location where drugs are found is insufficient to establish constructive possession." *People v Wolfe*, 440 Mich 508, 520; 441 Mich 1201 (1992). While residence at the subject house is certainly relevant to the question of constructive possession, the legal standard is not satisfied by residence alone, but rather whether that the defendant exercised "*dominion or right of control* over the drug with knowledge of its presence and character." *People v McKinney*, 258 Mich App 157, 165; 670 NW2d 254 (2003) (quotation marks and citations omitted).

Beyond mere presence or possible residence, demonstrating dominion and control requires additional circumstances, albeit ones that may vary from case to case. *Wolfe*, 440 Mich at 520 ("some additional connection between the defendant and the contraband must be shown."); see also *id*. at 522-524 (the defendant attempted to destroy drugs when police arrived, was found in possession of $5 used to purchase cocaine by an undercover officer, and possessed the only key to the apartment where the drugs were discovered); *McKinney*, 258 Mich App at 166 (the defendant claimed ownership of $3,000 discovered by police and shared the bedroom where the drugs were discovered); *People v Nunez*, 242 Mich App 610, 615-616; 619 NW2d 550 (2000) (possession established where police found utility bills addressed to the defendant, the defendant had a key to the apartment, and a witness testified that the defendant resided in the apartment).

In the instant case, the prosecution did not assert that defendant lived alone in the 32nd Street home and the defense presented evidence that at least two other men resided there. Finding the proofs sufficient is even more difficult, given that the contraband was found in a

-4-

common area, i.e., a room in the house accessible to all residents and as to which defendant, if he did live there, had no special or exclusive dominion. Thus, even if only one member of the household had dominion and control over the contraband and the others never exercised any control over it, by definition, each member of the household shared a "nexus" with the contraband, by virtue of their residence in the home where it was found. However, this does not answer the question of which of the residents had dominion and control over the drugs. It is not a crime to merely live in a house in which someone else possesses drugs. And again, "[i]t is well established that a person's presence, by itself, at a location where drugs are found is insufficient to prove constructive possession." *Wolfe*, 440 Mich at 520.

The court did note that the letter addressed to defendant was found on a table and the drugs were found in a clothing hamper under that table. I agree that the location of the letter is of some relevance, but it was not found in the hamper along with the drugs and no drugs were on the table. I do not agree that the mere presence of the letter in the same common room as the hidden drugs is sufficient to establish defendant's dominion and control over the drugs. See *Nunez*, 242 Mich App at 615-616 (in addition to utility bills addressed to the defendant, police found defendant in possession of a key, and a witness testified explicitly that defendant resided there). Indeed, the letter was the sole object in the house identified as belonging to defendant. No other items were linked to the defendant. There were four bedrooms, none of which were identified as belonging to defendant or containing any of his possessions. There was no evidence that any items found in any bedrooms or closets belonged to defendant and the clothes in the hamper were not linked to him other than by the fact that they were men's clothes. I would agree that the fact that they were men's clothes would have been sufficient had the trial court concluded that no other men lived in the house, but it did not.

In my view, a conviction based solely on the letter would rest on insufficient evidence. Thus, the critical question is whether the man Geelhood observed the night before the search, making suspect transactions, was defendant. However, the trial court made no findings in this regard and its absence of such a finding is critical. Had the court found that the man seen the night before was defendant, I would defer to that finding and affirm the conviction as the events of the night before would link him to the drugs.[2] However, if the trial court found that the man seen the night before was not defendant, then he could not be properly found to have exercised dominion and control over the drugs found in the house.

In sum, the trial court did not render sufficient factual findings for a reviewing court to determine whether it properly applied the law. *Jackson*, 390 Mich at 627. The proper remedy in such a case is to reverse the conviction and remand for a new trial. Accordingly, I would reverse defendant's conviction and remand for a new trial.

/s/ Douglas B. Shapiro

---

[2] Of course, if the trial court found that defendant was the man the police observed, it would lead to the conclusion that defendant was guilty of possession with intent to distribute.