# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

JAMES WILLIAM GORE,

       Defendant-Appellant.

UNPUBLISHED
December 18, 2014

No. 317605
Wayne Circuit Court
LC No. 12-008599-FC

Before: O'CONNELL, P.J., and BORRELLO and GLEICHER, JJ.

PER CURIAM.

A jury convicted defendant of two counts of felonious assault, MCL 750.82, and one count of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, for shooting a rifle at his landlord and a property manager.[1] The prosecutor engaged in misconduct by asserting in closing argument that one of the victims was not present at trial because he was afraid. And the trial court should have conducted a more probing inquiry regarding the witness's absence before deciding not to instruct the jury that it could infer that the missing witness's testimony would have been unfavorable to the prosecution. However, neither of these errors was outcome determinative and we affirm defendant's convictions and sentences.

## I. BACKGROUND

Defendant's convictions arise from a shooting outside his rented home. Defendant's landlord, Charles Miles, had secured a court order to remove defendant from the property for nonpayment of rent. Anticipating that Miles had obeyed the court order and vacated the property the previous day, Miles travelled to the residence on August 21, 2012. Miles arranged to meet Jason Greene, a property manager, whom he had hired to change the locks and secure the windows. While Miles awaited Greene's arrival, he contacted defendant by telephone. Defendant was not at the house at that time, but informed Miles that he had not obeyed the court order to vacate the residence.

---

[1] Defendant has served his two-year term of imprisonment for the felony-firearm conviction, and remains on probation for the felonious assault convictions.

Greene arrived at the scene and he and Miles stood in front of the house discussing their options. Defendant returned and stormed past Greene and Miles, saying nothing. Approximately 30 seconds later, defendant came back outside holding a rifle. Defendant attempted to fire a shot, but was unsuccessful. Miles and Greene ran down the street and hid two blocks away. As the men ran, defendant fired several shots in their direction. One punctured Miles's arm. The two men contacted 911, and an emergency medical technician tended to Miles's injury. The officers who arrived at the scene testified that both men appeared scared and shaken. The day after the shooting, Miles obtained an eviction order against defendant, and two days later, an officer arrested defendant at the subject property.

Defendant did not dispute that an altercation occurred on the day in question. Rather, he denied that he shot at Miles and Greene and challenged Miles's authority to evict him from the house. The jury ultimately acquitted defendant of two greater offenses, assault with intent to murder and assault with intent to do great bodily harm less than murder, and convicted him of two counts of the alternative lesser offense of felonious assault and a single count of felony-firearm.

## II. MISSING WITNESS INSTRUCTION

The prosecutor did not present Greene as a witness at defendant's preliminary examination but included him as an endorsed witness on her trial witness list. By the time of the trial, however, Greene refused to testify. As noted by the prosecutor before jury selection, Greene told the prosecutor that his nephew had been shot the previous week in a drive-by shooting because he had testified in an unrelated criminal case. This frightened Greene. Prior to Greene's revelation, the prosecutor had attempted to personally serve a subpoena at his residence twice, and had secured a detainer but "[h]e ha[d] not been picked up." The record provides no explanation for the failure to execute the detainer order.

Rather than request a missing witness jury instruction, defense counsel tried to argue in opening statement that the jury could presume that Greene's testimony would be unfavorable to the prosecution. The prosecutor objected and defense counsel asserted that he could raise such an argument because the prosecutor injected the issue during jury voir dire. Specifically, the prosecutor questioned the potential jurors, "Would you hold it against the People's case if other evidence proved the count, but you didn't hear from that individual," and "Does anyone here have an issue with finding the Defendant may have committed a crime against an individual if that individual isn't here to testify."

The trial court sustained the prosecutor's objection and precluded defense counsel's line of argument. The presumption that a missing witness's testimony would be unfavorable to the prosecution is limited to situations where the court "has made a specific finding that it was the prosecution's fault that they didn't produce that evidence," the court reasoned. Then, the court may give a jury instruction regarding the missing witness. However, the court concluded, "I don't think that's what we're dealing with here. That's my ruling." Defense counsel was permitted to mention in opening *statement* that Greene would be absent from trial. However, any attempt to persuade the jury to assign meaning to Greene's absence would be limited to closing *argument*.

At the beginning of the second day of trial, the prosecutor indicated on the record that she was providing proposed jury instructions to the court. The prosecutor described "unique" instructions that she had included; a missing witness instruction was not among them. Defense counsel raised no objection nor did he request the instruction. The court gave the attorneys an opportunity to raise any additional issues before reading the final jury instructions and defense counsel again raised no complaint. Accordingly, the court gave no missing witness instruction to the jury. And defense counsel thereafter affirmatively expressed satisfaction with the instructions as given.

Defendant challenges the trial court's failure to give a missing witness instruction. M Crim JI 5.12 permits a court to instruct the jury that the prosecutor is responsible for securing a witness's presence and that the jury may infer that an absent witness's testimony would have been unfavorable to the prosecution. We review for an abuse of discretion a trial court's decision not to give a missing witness jury instruction. *People v Steele*, 283 Mich App 472, 485; 769 NW2d 256 (2009). We will reverse a defendant's conviction for the failure to give a jury instruction only if "it appears that it is more probable than not that the error was outcome determinative." *People v McKinney*, 258 Mich App 157, 163; 670 NW2d 254 (2003).

A defendant is not automatically entitled to a missing witness jury instruction. Rather, such an instruction is only appropriate when the trial court finds that the prosecutor failed in his or her duty to exercise due diligence to secure the witness's presence at trial. *People v Eccles*, 260 Mich App 379, 388-389; 677 NW2d 76 (2004). "Due diligence is the attempt to do everything reasonable, not everything possible, to obtain the presence of res gestae witnesses." *People v Cummings*, 171 Mich App 577, 585; 430 NW2d 790 (1988) (quotation marks and citation omitted). "The test is one of reasonableness and depends on the facts and circumstances of each case, i.e., whether diligent good-faith efforts were made to procure the testimony, not whether more stringent efforts would have produced it." *People v Bean*, 457 Mich 677, 684; 580 NW2d 390 (1998).

Here, there is no reason to believe that the prosecutor should have been on guard that Greene would back out of testifying at defendant's trial. There is no record explanation of Greene's absence at the preliminary examination and no reason to believe that he avoided a request made by the prosecutor to testify at that hearing. The prosecutor knew Greene's address and twice tried to serve a subpoena for trial. On one occasion, Greene's father was present, but did not know his son's whereabouts. No one answered on the door on the second visit. And the prosecutor easily reached Greene by telephone. During that call on the eve of trial, Greene expressed his hesitation to testify.

We are puzzled by the prosecutor's failure to execute the detainer so as to secure Greene's presence at trial. However, defendant never questioned the prosecutor's actions, leaving no record of whether the prosecutor attempted to locate and detain Greene or whether she opted to forego presenting Greene as a witness.

Even if the prosecutor did not fulfill its duty of due diligence, the absence of a missing witness jury instruction at defendant's trial was not outcome determinative. See *McKinney*, 258 Mich App at 163. The evidence presented by the other prosecution witnesses clearly established that defendant feloniously assaulted Greene, thereby weakening the effect any missing witness

instruction could have had on the jury. To prove a charge of felonious assault, the prosecutor must establish (1) the occurrence of an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in fear. *People v Chambers*, 277 Mich App 1, 8; 742 NW2d 610 (2007). Miles testified that defendant shot at both he and Greene. Miles further stated that he and Greene ran from defendant for two blocks and hid. Defendant chased them and from their hiding spot, Miles and Greene could hear defendant yelling "I'm going to kill you." The prosecutor played a 911 call for the jury during which Greene described the shooting incident and requested police protection from defendant. Detroit Police Officer Devon Maples testified that he responded to the location where Miles and Greene were hiding. Maples described that both men were "in panic" and "scared." Maples specifically indicated that Greene "was a little shaken and scared" and "kept talking about calling his pastor." Even if the jury were to presume that Greene would have contradicted this story, he would merely create a credibility contest, not definitively disprove the elements of the offense.

### III. PROSECUTORIAL MISCONDUCT

During closing argument, the prosecutor commented on Greene's absence from the trial:

> Obviously Mr. Greene is not here. But I ask you to use your common sense. He goes to do his job. He's called on a job. He doesn't know the defendant from anyone. He probably doesn't even know Mr. Miles very well. He's doing his job. He gets to the place where he's supposed to do his job and then he's shot at. He's running for his life. He's hiding in fear. Mr. Greene is scared. He was scared on that day. *And he was scared to come to court. And that's why he is not here.* [Emphasis added.]

In rebuttal closing argument, the prosecutor reiterated, "The fact of the matter is, [defendant] did assault Mr. Greene, who's scared to be here . . . ."

Defendant contends that the prosecutor improperly relied on facts not in evidence in making this argument and "struck a significant 'foul blow' in her zeal to secure [defendant's] conviction." The prosecutor's comments were highly prejudicial, defendant asserts, because they pertained to an element of felonious assault: whether Greene was placed in fear. Defendant failed to preserve his challenge by objecting in the trial court. See *People v Thomas*, 260 Mich App 450, 453; 678 NW2d 631 (2004). Our review is therefore limited to plain error affecting defendant's substantial rights. *People v Abraham*, 256 Mich App 265, 274; 662 NW2d 836 (2003). We must examine the record as a whole and consider the prosecutor's statements in context in determining whether plain error occurred. *People v Dobek*, 274 Mich App 58, 64; 732 NW2d 546 (2007).

The prosecutor did make improper arguments before the jury. Although Greene imparted to the prosecutor that he was frightened to testify, that information was not presented to the jury. The prosecutor is precluded from arguing facts not in evidence. *People v Watson*, 245 Mich App 572, 588; 629 NW2d 411 (2001). Although the prosecutor may argue reasonable inferences arising from the evidence, *id.*, it was not reasonable to infer from the trial evidence that Greene was absent because he was afraid to testify. Obviously Greene was frightened during the offense, as was Miles. That Greene was not at trial while Miles was present does not necessarily

-4-

reflect Greene's fear of testifying. Rather, the jury could have reached any number of conclusions regarding Greene's absence without the prosecutor's comments.

Reversal is not warranted, however, when "[t]he inaccurate prosecutorial remark was isolated, brief, and did not affect the outcome of [the] defendant's trial." *People v Unger*, 278 Mich App 210, 239; 749 NW2d 272 (2008). The prosecutor's comments were brief, forming a small portion of her argument regarding the apprehension element of felonious assault. And the evidence supported that Greene was placed in fear during the offense. Accordingly, it is unlikely that the jury's felonious assault conviction was based on the prosecutor's improper commentary.

We affirm.

/s/ Stephen L. Borrello
/s/ Elizabeth L. Gleicher