# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
February 10, 2015

v

TIMOTHY JAY MILLER,

Defendant-Appellant.

No. 317187
Kent Circuit Court
LC No. 12-010012-FC

Before: O'CONNELL, P.J., and SAWYER and MARKEY, JJ.

PER CURIAM.

Defendant, Timothy Jay Miller, appeals as of right his convictions following a jury trial of felony murder, MCL 750.316(1)(b), and armed robbery, MCL 750.529. The prosecutor charged Miller under an aiding and abetting theory. We affirm.

## I. FACTS

On September 25, 2012, Amy Boyd called the police because she was concerned that her coworker, Santiago Zapata, had not come in to work for several days. Grand Rapids Police Officer Glen Brower found Zapata dead in the basement of his home of multiple stab wounds. Zapata had coached Miller's basketball team and Mary Aalsburg, Zapata's next door neighbor, testified that Zapata occasionally allowed Miller to sleep at his house.

Aalsburg testified that she and Zapata briefly exchanged words at around 7:45 p.m. on September 20, 2012, and that she did not see Zapata again after that. Amon Willis, an acquaintance of Miller and codefendant Maceo Scott,[1] testified that Miller asked him for a ride at around midnight on September 20, 2012. According to Willis, Miller was wearing a bloody shirt and said, "I did something wrong, I got to get out." Miller threw the bloody shirt in a parked car and went to the apartment of Scott's girlfriend.

Officers arrested Miller and Scott on October 2, 2012. David Hayhurst, a Michigan State Police forensic scientist, testified that blood samples on the bottom of Scott's shoes tested

---

[1] Scott has also appealed his conviction.

positive for Zapata's DNA. Scott's shoes also matched bloody footprints that investigators found in the basement of Zapata's home.

Grand Rapids Police Detective Timothy Devries interviewed Miller after his arrest. During his interviews, Miller admitted that he and Scott were together on September 20, 2012. According to Miller, they intended to rob someone. Scott asked to scare Zapata, showed Miller a knife, and stated that he would make Zapata give him money. Scott went into Zapata's home alone because Zapata would not recognize Scott. Miller went in some time later and did not see Zapata. Scott told him that Zapata was downstairs and he was okay. Miller and Scott then took the keys to Zapata's car, drove to an ATM, and attempted to use Zapata's ATM card.

Miller stated that he was not involved in the killing and did not want Zapata to die. James Caldwell testified that when he called Miller to inform him of Zapata's death, Miller seemed genuinely surprised by the news. According to Caldwell, Miller said that he was a couple of blocks from the house when the murder took place. Miller also told Caldwell that he and Scott received $800 from the robbery.

At trial, Miller requested that the trial court instruct the jury on the defense of abandonment and the crime of accessory after the fact. The trial court denied Miller's request for an abandonment instruction, reasoning that abandonment is only a defense to an attempt crime. The trial court also denied Miller's request for an instruction on accessory after the fact, ruling that it was not a lesser included offense of felony murder under an aiding and abetting theory. Over Miller's objection, the trial court instructed the jury on aiding and abetting. The jury found Miller guilty of armed robbery and felony murder.

## II. JURY INSTRUCTIONS

Miller contends that the trial court's failure to properly instruct the jury violated his right to a fair trial and entitled him to a new trial. We disagree.

When reviewing a claim of instructional error, this Court views the instructions as a whole to determine whether they adequately presented to the jury the issues to be tried. *People v Kurr*, 253 Mich App 317, 327; 654 NW2d 651 (2002). This Court reviews de novo questions of law, including whether an offense is an included lesser offense and whether an instructional error violated a defendant's due process rights. *People v Wilder*, 485 Mich 35, 40; 780 NW2d 265 (2010). This Court reviews for an abuse of discretion the trial court's decision regarding the applicability of a jury instruction to the facts of a specific case. *People v McKinney*, 258 Mich App 157, 163; 670 NW2d 254 (2003).

"A criminal defendant is entitled to have a properly instructed jury consider the evidence against him." *People v Riddle*, 467 Mich 116, 124; 649 NW2d 30 (2002). Generally, the trial court must grant a defendant's request for an instruction on a theory or defense if the evidence supports it. *McKinney*, 258 Mich App at 163. But the defendant is required to produce some evidence on all elements of a defense before the trial court must instruct the jury on it. *People v Guajardo*, 300 Mich App 26, 34-35; 832 NW2d 409 (2013). And a defendant is only entitled to an instruction on an offense if the offense is a lesser included offense of the crime charged and a

rational view of the evidence supports the instruction. MCL 768.32(1); *People v Cornell*, 466 Mich 335, 354-355; 646 NW2d 127 (2002).

On appeal, Miller wholly fails to address the basis for the trial court's decision to deny his request for specific jury instructions. "An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004). In this case, the trial court denied Miller's requested instructions because Miller did not show the elements of an abandonment defense, which include that the crime charged is an attempt crime, and he did not show that accessory after the fact is a lesser included offense of felony murder. Rather than asserting that the trial court erred in these rulings, Miller instead contends on appeal that the facts in this case supported these instructions. Miller's arguments do not address the basis of the trial court's decision.

We conclude that Miller has abandoned his assertions of error by failing to adequately address the merits of his assertion. In any case, we have reviewed the trial court's rulings and conclude that it correctly denied Miller's request for the instructions.

## III. SUFFICIENCY OF THE EVIDENCE

Miller contends that the trial court should have granted him a new trial or directed verdict because the prosecutor did not present sufficient evidence on the intent element of felony murder. We disagree.

A claim that the evidence was insufficient to convict a defendant invokes that defendant's constitutional right to due process of law. *People v Wolfe*, 440 Mich 508, 514; 489 NW2d 748 (1992). This Court reviews de novo a defendant's challenge to the sufficiency of the evidence supporting his or her convictions. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). We review the evidence in a light most favorable to the prosecutor to determine whether a rational trier of fact could find that the prosecutor proved the crime's elements beyond a reasonable doubt. *Id*. at 196. We apply the same standards to our review of the trial court's decision on a motion for a directed verdict. See *People v Aldrich*, 246 Mich App 101, 122; 631 NW2d 67 (2001).

The elements of felony murder under an aiding and abetting theory are that the defendant

(1) performed acts or gave encouragement that assisted the commission of the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result, (3) while committing, attempting to commit, or assisting in the commission of the predicate felony. [*People v Riley (After Remand)*, 468 Mich 135, 140; 659 NW2d 611 (2003).]

A probable result of an armed robbery is that the victim may be killed. See *People v Kelly*, 423 Mich 261, 277-278; 378 NW2d 365 (1985); *People v Robinson*, 475 Mich 1, 3; 715 NW2d 44 (2006). Circumstantial evidence and reasonable inferences arising from that evidence can prove the elements of a crime, including the defendant's intent. *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008).

In this case, Miller admitted to Detective Devries that he and Scott intended to rob Zapata and that he participated in planning the robbery. Scott showed Miller that he had a knife. Zapata died of multiple stab wounds. Willis testified that, later that evening, Miller was wearing a bloody shirt and admitted that he did something wrong. Viewing the evidence in a light most favorable to the prosecutor, a rational trier of fact could infer that Miller was aware that the robbery could result in Zapata's death but that he intended to create that risk anyway. Accordingly, we conclude that the prosecutor provided sufficient evidence of Miller's intent to commit felony murder under an aiding and abetting theory.

Affirmed.

/s/ Peter D. O'Connell
/s/ David H. Sawyer
/s/ Jane E. Markey

-4-