*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MIQUEENISE CHANTAL WEED,

Defendant-Appellant.

UNPUBLISHED
January 16, 2026
1:18 PM

No. 372136
Kent Circuit Court
LC No. 19-002781-FC

Before: RICK, P.J., and MALDONADO and KOROBKIN, JJ.

PER CURIAM.

Defendant, Miqueenise Chantal Weed, pleaded guilty to unarmed robbery, MCL 750.530, and assault with intent to murder, MCL 750.83. Honoring a plea agreement, the trial court initially sentenced defendant to one year in jail, five years of probation, and to pay costs and fees. But defendant's probation was revoked, and the trial court resentenced defendant to 6 to 15 years' imprisonment for the robbery conviction and 15 to 60 years' imprisonment for the assault with intent to murder conviction. Defendant now appeals by leave granted,[1] challenging the proportionality of her sentences and the trial court's failure to waive costs and fees on indigency grounds. We affirm.

## I. BACKGROUND AND FACTS

This case arises out of defendant aiding and abetting an armed robbery and assault in October 2018, which resulted in the death of the victim. According to defendant's presentence investigation report, the robbery was the idea of her boyfriend and codefendant, Marcus Terrell. Defendant recruited codefendant Corey Jones at Terrell's request, and Jones agreed. Defendant admitted that she set up the robbery. When the victim entered his residence, Jones and Terrell, who were hiding outside, also entered the home and began fighting the victim. Terrell and Jones punched the victim in the head and body before taking turns choking the victim. Terrell put the

---

[1] *People v Weed*, unpublished order of the Court of Appeals, entered October 23, 2024 (Docket No. 372136).

victim in a headlock, and the victim became unresponsive. After realizing that the victim was likely dead, Terrell and Jones carried the victim's body out the front door to the victim's car while defendant stayed back to clean the residence. Defendant initially stated, under oath pursuant to an investigative subpoena, that she did not know where Terrell and Jones took the body or what happened after they left. However, when confronted with witness testimony, defendant admitted that she went back to the scene with Terrell that night to wipe their prints off the victim's car. She stated that she only wiped down the driver's side door handle before becoming spooked by passing motorists.

Defendant was initially charged with one count of open murder, MCL 750.316, and one count of unarmed robbery, MCL 750. As part of a plea agreement, defendant pleaded guilty to unarmed robbery, MCL 750.530, and aiding and abetting an assault with intent to murder, MCL 750.83. In exchange for her guilty plea and her truthful testimony against both of her codefendants, the prosecution dismissed the open murder charge and recommended a sentence of one year in jail and five years of probation. Sentencing took place in November 2019, and the trial court stated:

> I will follow that agreement, ma'am, but I need to caution you. That agreement is only good today. If you come back in front of me in the next five years on a probation violation, all bets are off, and your sentencing guideline range calls for a minimum sentence between 14 and 23 years.

Defendant was thus sentenced to one year in jail (with 324 days credit for time served), five years of probation, 500 hours of community service, a nighttime curfew, and fees and costs totaling $1,326—consisting of a $60 DNA fee, $68 in state costs, $130 in crime victim costs, and $1,000 in court costs.

In 2021, defendant failed to appear after the trial court summoned her for a hearing on an alleged probation violation for retail fraud. The trial court then issued a bench warrant for her arrest. Defendant absconded out of state. By August 2023, defendant was back in custody in Michigan, and she pleaded guilty to two probation violations—one for leaving the state without the consent of the court and one for failing to report to her probation officer and later absconding. At resentencing, the applicable guidelines range for defendant's assault with intent to murder conviction was 171 to 285 months. The trial court resentenced defendant within the guidelines as previously described and justified the sentence as follows:

> You were clearly involved in a murder, and you clearly could have been convicted of felony murder and gone to prison for the rest of your life. You aided your boyfriend at the time getting an individual over to the house knowing that they were going to rob him. Things went south, and that man ended up getting killed. You were clearly involved in that. You knew what was going on, you knew that you were going to rob him.
>
> * * *
>
> Under the agent's description of the incident, they talked about the fact that you and Jones had lied under your investigative subpoena, that there was a statement by you, clearly here, that you set it up for them and you knew what was going on. You

were very involved in this, and there's no justification for somebody dying like this whatsoever, ma'am.

Defendant later moved for resentencing and to waive and/or suspend costs and fees. The trial court denied defendant's motions. This Court granted leave to appeal.

## II. STANDARDS OF REVIEW

"[T]he standard of review to be applied by appellate courts reviewing a sentence for reasonableness on appeal is abuse of discretion." *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). "[T]he relevant question for appellate courts reviewing a sentence for reasonableness [is] . . . whether the trial court abused its discretion by violating the principle of proportionality . . . [.]" *Id*.

"This Court reviews a trial court's ruling on a motion for costs and attorney fees for an abuse of discretion. An abuse of discretion occurs when the decision results in an outcome falling outside the range of principled outcomes." *Keinz v Keinz*, 290 Mich App 137, 141; 799 NW2d 576 (2010) (citation omitted).

## III. ANALYSIS

## A. PROPORTIONALITY

Defendant contends that the trial court abused its discretion because her within-guidelines 15-year minimum sentence for her conviction for assault with intent to commit murder was disproportionate.[2] We disagree.

As an initial matter, "violation of probation is not a crime, and a ruling that probation has been violated is not a new conviction." *People v Kaczmarek*, 464 Mich 478, 482; 628 NW2d 484 (2001). "Instead, revocation of probation simply clears the way for a resentencing on the original offense." *Id*. " 'If a probation order is revoked, the court may sentence the probationer in the same manner and to the same penalty as the court might have done if the probation order had never been made.' " *People v Hendrick*, 472 Mich 555, 561; 697 NW2d 511 (2005), quoting MCL 771.4. "[T]he sentencing court is not precluded," however, "from considering events surrounding the probation violation when sentencing the defendant on the original offense." *Id*. at 557.

"[S]entencing guidelines apply to sentences imposed after a probation violation . . . ." *Id*. Although the sentencing guidelines are advisory, trial courts must still consider the guidelines in sentencing determinations as "they remain a highly relevant consideration in a trial court's exercise of sentencing discretion." *People v Lockridge*, 498 Mich 358, 365; 870 NW2d 502 (2015). "A

---

[2] Defendant also asserts that her six-year sentence for unarmed robbery was disproportionate but develops no further argument beyond her assertion. Therefore, we deem abandoned any separate argument defendant may have regarding her sentence for unarmed robbery. See *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

trial court's sentencing decisions must be based on the principle of proportionality." *People v Mason*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367687); slip op at 2 (quotation marks and citation omitted). "[P]roportionality requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Steanhouse*, 500 Mich at 474 (quotation marks and citation omitted). In other words, when fashioning a sentence, a trial court "must take into account the nature of the offense and the background of the offender." *People v Milbourn*, 435 Mich 630, 651; 461 NW2d 1 (1990), abrogated in part on other grounds by *Steanhouse*, 500 Mich at 477. "Under the guidelines, . . . the appropriate sentence range is determined by reference to the principle of proportionality; it is a function of the seriousness of the crime and of the defendant's criminal history." *People v Babcock*, 469 Mich 247, 264; 666 NW2d 231 (2003). Ultimately, however, "the key test" under the principle of proportionality "is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range." *People v Dixon-Bey*, 321 Mich App 490, 520; 909 NW2d 458 (2017) (quotation marks and citation omitted).

Under the proportionality standard, factors that may be considered by the trial court include, but are not limited to:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*People v Lampe*, 327 Mich App 104, 126; 933 NW2d 314 (2019) (quotation marks and citation omitted).]

"A sentencing court is allowed to consider the facts underlying uncharged offenses . . . ." *People v Coulter*, 205 Mich App 453, 456; 517 NW2d 827 (1994). "Further, this Court has recognized that a sentencing court may consider the nature of a plea bargain and the charges that were dismissed in exchange for the plea for which the court is sentencing." *Id*.

On appeal, we "review all sentences for reasonableness," *People v Posey*, 512 Mich 317, 352; 1 NW3d 101 (2023), and "a sentence is unreasonable—and therefore an abuse of discretion—if the trial court failed to adhere to the principle of proportionality in imposing its sentence on a defendant," *Lampe*, 327 Mich App at 125. " 'When a trial court sentences a defendant within the guidelines' recommended range, it creates a presumption that the sentence is proportionate.' To overcome that presumption, 'the defendant bears the burden of demonstrating that their within-guidelines sentence is unreasonable or disproportionate.' " *People v Ventour*, ___ Mich App ___; ___ NW3d ___ (2023) (Docket No. 363922); slip op at 7, quoting *Posey*, 512 Mich at 359. "A defendant may overcome the presumptive proportionality of a within-guidelines sentence by 'present[ing] unusual circumstances that would render the presumptively proportionate sentence disproportionate.' " *Ventour*, ___ Mich App at __; slip op at 8, quoting *People v Bowling*, 299 Mich App 552, 558; 830 NW2d 800 (2013).

Turning to the present case, we conclude that defendant has not overcome that presumption on appeal. Defendant acknowledges that the applicable guidelines range for her assault with intent to murder conviction was 171 to 285 months, and the trial court resentenced her to a minimum sentence of 15 years (180 months), which is at the lower end of that range. Accordingly, defendant

bears the burden of presenting "unusual circumstances" that would render the presumptively proportionate sentence disproportionate. *Id.*

First, defendant contends that her current sentence is "a significant departure from the original sentence without any justification[] . . . ." Although a trial court is not required to "expressly explain why a within-guidelines sentence is reasonable and proportionate," *People v Posey (On Remand)*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket Nos. 345491 and 351834); slip op at 4, it must "articulate a justification for the sentence imposed in a manner sufficient to facilitate appellate review," *People v Copeland*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 363925); slip op at 9. In this case, at the resentencing hearing following defendant's probation violations, the trial court justified its sentence by discussing the seriousness of defendant's conduct regarding the underlying offense. As discussed, the trial court specifically stated:

> You were clearly involved in a murder, and you clearly could have been convicted of felony murder and gone to prison for the rest of your life. You aided your boyfriend at the time getting an individual over to the house knowing that they were going to rob him. Things went south, and that man ended up getting killed. You were clearly involved in that. You knew what was going on, you knew that you were going to rob him.

> \* \* \*

> Under the agent's description of the incident, they talked about the fact that you and Jones had lied under your investigative subpoena, that there was a statement by you, clearly here, that you set it up for them and you knew what was going on. You were very involved in this, and there's no justification for somebody dying like this whatsoever, ma'am.

The trial court also reminded defendant that it had warned her at her initial sentencing hearing that she would face a "significant sentence" if she violated her probation terms, noted the applicable guidelines range, and resentenced defendant within that range. Although defendant is correct that her sentence after violating probation was greater than the sentence imposing probation, that is almost always the case when a trial court sentences a defendant on the underlying offense after a probation violation; it does not constitute unusual circumstances making the sentence disproportionate. Additionally, contrary to defendant's argument, the trial court provided a justification for the sentence by discussing the seriousness of the underlying offense conduct and the need for there to be consequences for defendant's subsequent probation violations.

Next, defendant contends that her probation violations were not serious or violent and that her probation record demonstrated her potential for rehabilitation. However, the trial court was permitted to conclude that when defendant absconded and failed to abide by the terms of her probation, she demonstrated "an unwillingness to obey the law after prior encounters with the criminal justice system," and "in light of [her] recidivism a greater punishment is reasonable." *People v Purdle (On Remand)*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 353821); slip op at 6. Furthermore, defendant was not being sentenced for the conduct that violated the terms of her probation; she was being resentenced on the underlying offense, which

involved a robbery and assault causing death. See *Hendrick*, 472 Mich at 562. The violent offense conduct was serious enough to justify a within-guidelines sentence, and the fact that defendant's subsequent probation-violation conduct was nonviolent does not, under these circumstances, overcome the presumption that a within-guidelines sentence is proportionate.

Finally, defendant contends that the trial court failed to consider her successful completion of community service, her remorse, and her cooperation and willingness to testify against her codefendants in spite of death threats. We disagree, as the trial court was in possession of defendant's presentence investigation and probation violation reports, which contained information regarding these mitigating factors and which the court explicitly referred to at sentencing. The trial court also gave defendant an opportunity to make a statement during which she expressed her remorse. The record is devoid of any indication that the trial court wholly failed to consider these mitigating factors in imposing defendant's sentence, and defendant's mere assertion that they were not given proper weight in the trial court's sentencing decision is insufficient to overcome the presumption of proportionality in our abuse-of-discretion review.

In sum, considering all the facts of defendant's underlying offense conduct followed by her probation violations, defendant has not overcome the presumption that her within-guidelines sentence of 15 to 60 years' imprisonment is proportionate to "the seriousness of the circumstances surrounding the offense and the offender." *Steanhouse*, 500 Mich at 474; see also *Coulter*, 205 Mich App at 456. Defendant's minimum sentence fell near the lower end of the applicable guidelines range and was imposed after the court had an opportunity to consider both aggravating and mitigating factors. Defendant has not demonstrated any unusual circumstances sufficient to rebut the presumption of proportionality. Accordingly, the trial court did not abuse its discretion.[3]

## B. COSTS AND FEES

Defendant argues that the trial court abused its discretion by denying her motion to waive and/or suspend fines and costs on indigency grounds. We disagree.

"Courts may only impose costs in a criminal case when such costs are authorized by statute." *People v Moore*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 371556); slip op at 3. MCL 769.1k requires a sentencing court to impose minimum state costs upon convicted defendants and authorizes the court to impose statutory fines, court costs, and attorney fees. MCL 769.1k(1)(a) and (b). Under MCL 769.1*l*, trial courts may order that costs and fees imposed under MCL 769.1k on incarcerated defendants be remitted to the court from the defendant's prisoner funds using a statutory formula. MCL 769.1*l* provides, in relevant part:

---

[3] Defendant also contends, in summary fashion, that her sentences are cruel and/or unusual punishment in violation of the United States and Michigan Constitutions. However, defendant did not raise this claim in the trial court, so it is unpreserved. Nor does defendant develop this argument on appeal and in fact acknowledges that "a proportionate sentence is not cruel or unusual." Because defendant has failed to rebut the presumption of proportionality and has not separately briefed her constitutional claim, we decline to address it. See *Payne*, 285 Mich App at 188.

If a prisoner under the jurisdiction of the department of corrections has been ordered to pay any sum of money as described in section 1k and the department of corrections receives an order from the court on a form prescribed by the state court administrative office, the department of corrections shall deduct 50% of the funds received by the prisoner in a month over $50.00 and promptly forward a payment to the court as provided in the order when the amount exceeds $100.00, or the entire amount if the prisoner is paroled, is transferred to community programs, or is discharged on the maximum sentence.

In *People v Jackson*, 483 Mich 271, 296-297; 769 NW2d 630 (2009), our Supreme Court held that assessing costs and fees upon an indigent defendant at the time of imposition, i.e., at sentencing, is not inherently unconstitutional; however, upon a defendant's timely objection regarding their indigency status, the trial court should amend the amount "when, in its discretion, it determines that enforcement would work a manifest hardship on the prisoner or his immediate family." MCL 769.1*l* statutorily presumes incarcerated defendants are nonindigent, *id*. at 295, but they can rebut this presumption by showing "unique individual financial circumstances," *id*. at 296. Incarcerated defendants bear a "heavy burden" in this analysis, though, because they are "provided all significant life necessities by the state" and the trial court "adjudge[s] a prisoner's indigency at the time of enforcement on the basis of manifest hardship." *Id*.

In the instant case, as part of its sentence, the trial court ordered defendant to pay fees and costs totaling $1,326—a $60 DNA fee, $68 in state costs, $130 in crime victim costs, and $1,000 in court costs. Defendant asserts that requiring her to pay these costs and fees constitutes an undue hardship because she is not earning enough of an income while incarcerated to pay these amounts when she must also pay for necessities such as toothpaste and soap. However, defendant fails to proffer any evidence to support her assertion that she is "unable to pay" her court-ordered fines and costs while incarcerated, so we are unable to meaningfully review the argument. See *People v McKinney*, 258 Mich App 157, 161-162; 670 NW2d 254 (2003). Without such evidence, defendant cannot overcome the "heavy burden of establishing [her] extraordinary financial circumstances." *Jackson*, 483 Mich at 296. As in *Jackson*, although defendant may not be earning significant income while incarcerated and therefore may not be able to pay all her assessed costs and fees at once, there was no evidence presented that the payment formula for prisoners in MCL 769.1*l* will result in manifest hardship to defendant, or deprive her of basic necessities like toothpaste and soap as she asserts. Because the trial court was statutorily authorized to order defendant to pay certain costs and fees as part of her sentence and defendant did not submit any evidence of "extraordinary financial circumstances" beyond those in *Jackson*, the trial court did not abuse its discretion by denying defendant's motion to suspend or waive the requirement that she pay costs and fees.

Affirmed.

/s/ Michelle M. Rick
/s/ Allie Greenleaf Maldonado
/s/ Daniel S. Korobkin