*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

MELVIN WILLIAMS,

      Defendant-Appellant.

UNPUBLISHED
October 16, 2024
12:00 PM

No. 362704
Washtenaw Circuit Court
LC No. 21-000566-FC

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v

MELVIN WILLIAMS,

      Defendant-Appellee.

No. 368171
Washtenaw Circuit Court
LC No. 21-000566-FC

Before: BOONSTRA, P.J., and JANSEN and N. P. HOOD, JJ.

PER CURIAM.

In Docket No. 362704, defendant appeals as of right his jury trial convictions for assault with intent to murder, MCL 750.83; carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b; felon in possession of a firearm (felon-in-possession), MCL 750.224f; carrying a dangerous weapon with unlawful intent, MCL 750.226; and discharging a firearm at a building, MCL 750.234b(1). Defendant was sentenced to 25 to 40 years' imprisonment for assault with intent to murder, two years' imprisonment for felony-firearm, two to five years' imprisonment for felon-in-possession and carrying a dangerous weapon with unlawful intent, and 4 to 10 years' imprisonment for discharging a firearm at a building. On appeal, defendant argues he was deprived of his right to counsel when the trial court denied his motion for substitute counsel; that irrelevant and unfairly prejudicial evidence was admitted by the trial court; and that he was deprived of his right to an impartial jury because there were no African-Americans in his jury pool. We affirm.

-1-

In Docket No. 368171, the prosecution appeals by leave granted[1] the trial court's order granting defendant's motion to vacate his convictions and sentences, and to reinstate his plea offer. The prosecution argues that the trial court erred by finding defendant's trial counsel was ineffective because he repeatedly informed defendant that his plea offer was favorable and urged him to accept it. We agree and reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a shooting that occurred on October 28, 2021. Angela Gardner was previously in a relationship with defendant. After they broke up, Angela began dating Willie Gardner. Angela began receiving threatening text messages from defendant, who also threatened Willie. On the day of the shooting, Angela and Willie were at home in Ypsilanti, when a masked man appeared and fired seven gunshots through the door, hitting Willie in the shoulder. The perpetrator fled, and both Angela and Willie, who recognized the assailant's stature and voice, respectively, identified defendant as the shooter. Defendant's friend, Jay Barnes, testified that he drove to the scene of the crime with defendant and witnessed defendant disposing of his clothes and gun at a nearby park after the shooting.

Defendant was tried by a jury, and convicted and sentenced as noted above. After trial, defendant moved to vacate his convictions and sentences and to reinstate his plea offer. He argued that his trial attorney did not review a recorded interview of Barnes before trial or the plea negotiation stage. Therefore, defendant had an inaccurate and incomplete understanding of the evidence against him when he rejected the plea offer. He would have accepted the plea offer had he known that Barnes was going to implicate him, and his plea offer should be reinstated because of his counsel's ineffective assistance under *Lafler v Cooper*, 566 US 156; 132 S Ct 1376; 182 L Ed 2d 398 (2012). Defendant filed an affidavit noting that he was offered a plea with a sentencing agreement of five years' imprisonment consecutive to the mandatory two years' imprisonment for felony-firearm. He stated his attorney did urge him to accept the plea offer and even spoke with defendant's daughter in an attempt to convince him to accept. He maintained his innocence when he rejected the plea offer, but contended he did not understand the evidence against him. He knew both Angela and Willie had identified him as the shooter, and knew Barnes spoke to police, but did not know Barnes implicated him in a recorded interview.

An evidentiary hearing was held on defendant's motion. Defendant's trial attorney, Robert Killewald, testified that defendant maintained his innocence throughout the time Killewald represented him, and defendant did not believe Barnes would testify against him. Killewald requested that the prosecution make a plea offer, and he defendant had a lot of disagreements, including whether defendant should accept. Defendant's family members called Killewald to encourage defendant to accept the plea offer, and Killewald even called defendant's daughter in his presence to urge him to accept the plea offer, but defendant "would have none of it" and wanted

---

[1] *People v Williams*, unpublished order of the Court of Appeals, entered March 19, 2024 (Docket Nos. 362704; 368171). The same order consolidated these cases on appeal. *Id*.

to proceed to trial. Killewald still advised defendant to accept the deal, recognizing that it was a favorable deal considering someone had been shot.

He attempted numerous times to contact Barnes, going to his workplace on several occasions, but Barnes would not talk with Killewald. Killewald knew Barnes was on the prosecution's witness list. Killewald explained to defendant that Barnes was going to testify against him, but defendant did not believe Killewald. Barnes told Killewald that he was on the prosecution's witness list, was going to testify, and told Killewald to leave him alone. Killewald knew the evidence was not in defendant's favor, especially with Barnes testifying. The last time Killewald spoke to Barnes before trial, Barnes said he was going to testify for the prosecution and then hung up the phone. Barnes refused to answer any more calls after that. Killewald knew Barnes was going to testify that he drove with defendant to the crime scene. He explained this to defendant before trial. Killewald's trial strategy was to discredit Barnes because his story to police changed several times. Both Killewald and defendant were aware that Barnes would implicate defendant if he testified. Killewald was not aware that Barnes had provided an on-the-record, taped interview with police incriminating defendant before trial. However, Killewald still knew Barnes was going to testify against defendant at trial and informed defendant of this fact. Killewald believed that even if defendant had knowledge of the recorded interview, he still would have gone to trial.

There was a police report filed by Detective Tom Boivin that summarized the contents of his interview with Barnes. Killewald said he took that police report to defendant before trial and went over it with him. The prosecution filed its witness list in a timely manner and Killewald informed defendant that Barnes was on that list every time he visited him in jail. Killewald told defendant that Barnes was not on the witness list just to say he did not see anything, but defendant continued to believe Barnes would not show up to trial.

Defendant testified at the hearing that Killewald encouraged him to accept the plea offer, but he rejected it. Defendant confirmed Killewald called his daughter to have her convince him to accept. Killewald informed defendant that the offer of seven years' imprisonment was a good deal and he would face a longer sentence if he was convicted. Defendant was aware that he had been identified as the shooter by Angela and Willie. He was also aware that Barnes had spoken with police. Defendant had not heard the taped interview before trial. Defendant recalled reading the summary of the taped interview in a police report written by Detective Boivin. Defendant believed the detective was trying to trick him into accepting a plea offer because defendant had heard Barnes's first interview with police where he denied any knowledge of the shooting. Defendant knew Barnes was going to testify at trial, but thought he was going to "tell the truth." Defendant said he would have accepted the plea offer had he known exactly what Barnes said on the record to the police. Defendant believed the detective was putting words in Barnes's mouth. Defendant knew Angela and Willie were both going to testify against him, but defendant maintained his innocence at the hearing nonetheless.

The trial court granted defendant's motion to vacate his convictions and sentences and to reinstate his plea offer. The trial court determined that Killewald was not aware that Barnes had provided a taped, on-the-record interview with Detective Boivin, despite being given the tape by the prosecution. The court found defendant was relying on Barnes's first two interviews where he did not implicate defendant, and it was understandable why defendant was not inclined to accept

the offer. The court noted there was a reasonable probability that the outcome would have been different and that defendant was prejudiced by not hearing the interview himself. The trial court also found that Killewald gave defendant good advice and was diligent in attempting to track down Barnes, but still granted the motion. The prosecution moved for reconsideration, which was denied by the trial court. These appeals followed.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

The prosecution argues the trial court erroneously applied *Lafler*, 566 US 156, where defendant's trial counsel urged defendant to accept the plea offer, defendant rejected this advice, and defendant rejected the plea offer because he did not believe his counsel's advice. The prosecution contends trial counsel was not ineffective because he advised defendant to accept the plea offer and explained why it was in his best interest to do so, and that defendant was not prejudiced by his attorney's performance because defendant would have rejected the plea offer even if he had heard the taped interview. We agree.

"Whether a defendant received ineffective assistance of trial counsel presents a mixed question of fact and constitutional law." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). This Court reviews factual findings for clear error. *Id*. "Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *Id*. This Court reviews questions of constitutional law de novo. *Id*.

Criminal defendants are entitled to effective assistance of counsel under the United States and Michigan Constitutions. *People v Yeager*, 511 Mich 478, 488; 999 NW2d 490 (2023), citing Const 1963, art 1, § 20; US Const Am VI; *Strickland v Washington*, 466 US 668, 686; 104 S Ct 2052; 80 L Ed 2d 674 (1984). To receive a new trial because of ineffective assistance of counsel, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that that outcome would have been different." *Yeager*, 511 Mich at 488 (quotation marks and citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Ackley*, 497 Mich 381, 389; 870 NW2d 858 (2015) (quotation marks and citation omitted). Attorneys are given leeway to decide their trial strategy, and there is a presumption of that strategy being sound. *Yeager*, 511 Mich at 488. However, an attorney's "strategic decisions must be objectively reasonable." *Id*. There is also a presumption that counsel was effective. *People v Cooper*, 309 Mich App 74, 80; 867 NW2d 452 (2015). "Trial counsel is not ineffective for failing to advocate a meritless position." *People v Payne*, 285 Mich App 181, 191; 774 NW2d 714 (2009).

In *Lafler*, defense counsel advised the defendant to reject a plea offer, the defendant did so, but was later convicted at trial and received a harsher sentence than what he would have received through the plea offer. *Lafler*, 566 US at 160. It was conceded that defense counsel's advice to reject the plea offer "fell below the standard of adequate assistance of counsel guaranteed by the Sixth Amendment." *Id*. The United States Supreme Court held that, when a defense counsel's ineffective advice leads to a rejection of a plea offer, a defendant must show that but for the ineffective advice, there was a reasonable probability that the defendant would have accepted the plea offer, the prosecution would not have withdrawn it, the trial court would have accepted

-4-

the plea, and the plea offer's sentencing terms were less severe than the sentence that was actually imposed after trial. *Id.* at 164.

In this matter, the trial court misapplied *Lafler*. *Lafler* is entirely premised on defense counsel's "ineffective advice" to reject a favorable plea offer where counsel's advice was based on a misunderstanding of the law. *Id.* at 164. Here, there was no ineffective advice given to defendant because defendant's trial counsel strongly urged defendant to accept the prosecution's favorable plea offer and there was no misunderstanding of the law. Therefore, *Lafler* does not support defendant's argument that his plea offer should be reinstated.

Additionally, a key part of *Lafler*'s holding is that to show that a plea offer should be reinstated, the defendant must show that the trial court would have accepted the plea offer. *Id.* Here, the trial court judge indicated during the evidentiary hearing that she would not accept the proposed plea offer, stating, "I'm not inclined to accept a five-year plea plus two." Defendant makes no argument that the trial court would have accepted the plea offer. Therefore, defendant has not shown that the plea offer was acceptable to the trial court, and the plea offer should not have been reinstated under *Lafler*.

Defendant argues that his attorney's performance fell below the objective standard of reasonableness when he failed to produce Barnes's final taped interview with police in which Barnes incriminated defendant. Defendant argues this despite his attorney repeatedly urging him to accept the plea offer that was proposed by the prosecution. The record shows that Killewald enlisted defendant's family members, including his daughter, to convince him to accept the deal. The record also shows Killewald informed defendant that Barnes was going to testify for the prosecution and that Barnes was going to tell the jury he drove with defendant to the crime scene. Barnes told defense counsel on the phone that he was going to testify for the prosecution while counsel was with defendant. Killewald read the police report summarizing Barnes's interview with Detective Boivin and shared this report with defendant. Defendant was fully aware that Barnes was going to testify against him, was provided with the police report that indicated just that, was advised by his counsel this testimony would be damaging, was advised by both counsel and his family that the plea offer was favorable and should be accepted, and yet defendant still rejected the plea offer and maintained his innocence. The notion that if Killewald had played Barnes's taped interview with police for defendant, of which defendant had already read a summary, that defendant would have then accepted the plea deal, is disingenuous and goes against the record evidence.

Killewald did not misunderstand the elements of the charged crimes or any other law. There is a presumption that an attorney's strategy is sound and that an attorney's performance is effective. *Yeager*, 511 Mich at 488; *Cooper*, 309 Mich App at 80. While in hindsight it is easy to suggest that Killewald should have played the interview for defendant, this Court cannot find this potential oversight to be objectively unreasonable. Killewald explained to defendant that Barnes would testify against him, discussed with defendant the contents of the police report summarizing Barnes's interview, and went to great lengths to persuade defendant to accept the favorable plea offer. Killewald's actions were reasonable. Defendant choosing not to believe the words of his attorney, who was appointed to represent defendant's interests, was objectively unreasonable, particularly in light of the overwhelming evidence against him.

Even if Killewald's performance was objectively unreasonable, defendant cannot show he was prejudiced and that there is a reasonable probability the outcome would have been different. *Yeager*, 511 Mich at 488. Defendant testified that he would have accepted the plea offer had he been played the taped interview of Barnes incriminating him. However, Killewald testified that even if he had been aware of Barnes's interview and had played it for defendant, defendant still would have rejected the plea offer and proceeded to trial. Each time Killewald encouraged defendant to accept the plea offer, defendant "would have none of it." Defendant also maintained his innocence throughout each stage of proceedings, including during the evidentiary hearing. Defendant would have been required to set forth a factual basis for his plea if he accepted the plea offer, which would have been inconsistent with defendant's claim of innocence. Defendant went against the wishes of his family and attorney by rejecting the plea offer. Defendant knew that he had been identified as the shooter by Angela and Willie. He knew Barnes was going to testify against him. He knew police found his clothes in a nearby trash can. It cannot be expected that defendant would suddenly have changed his mind on accepting a plea offer just from hearing the taped interview, especially when defendant had already been informed of what Barnes would say in court. There was no new information to be given to defendant. As discussed earlier, even if there was a reasonable probability that defendant would have changed his mind and accepted the plea offer, there is no evidence indicating the plea offer would have been accepted by the trial court.

Defendant's trial counsel was not ineffective; therefore, defendant is not entitled to relief on the basis of ineffective assistance of counsel. The trial court's order vacating defendant's convictions and sentences and reinstating defendant's plea offer is reversed.

## III. SUBSTITUTE COUNSEL

Defendant argues the trial court erred by not granting his request for substitute counsel because he and his attorney had a breakdown in communication. We disagree.

"A trial court's decision regarding substitution of counsel will not be disturbed absent an abuse of discretion." *People v Traylor*, 245 Mich App 460, 462; 628 NW2d 120 (2001). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *People v Strickland*, 293 Mich App 393, 397; 810 NW2d 660 (2011) (quotation marks and citation omitted).

> An indigent defendant is guaranteed the right to counsel; however, he is not entitled to have the attorney of his choice appointed simply by requesting that the attorney originally appointed be replaced. Appointment of a substitute counsel is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process. Good cause exists where a legitimate difference of opinion develops between a defendant and his appointed counsel with regard to a fundamental trial tactic. [*Traylor*, 245 Mich App at 462 (citation and quotation marks omitted).]

"A defendant may not purposely break down the attorney-client relationship by refusing to cooperate with his assigned attorney and then argue that there is good cause for a substitution of counsel." *Id.* (quotation marks and citation omitted). "A mere allegation that a defendant lacks

confidence in his or her attorney, unsupported by a substantial reason, does not amount to adequate cause." *Strickland*, 293 Mich App at 398. A defendant's "general unhappiness" with his or her counsel's representation is not good cause for a substitution. *Id*.

Here, there was no legitimate difference of opinion between defendant and his attorney regarding a fundamental trial tactic. Defendant complained that his attorney had not visited him enough in jail and noted a general lack of communication. Defendant's attorney stated he had visited defendant and promised to do so more often before trial. After defendant's outburst at trial regarding his attorney's performance, the trial court noted the attorney was "a zealous advocate for [defendant]." Defendant's outburst included him expressing anger at the end of the first day of trial about his attorney encouraging him to accept a plea offer from the prosecution. Neither defendant's general unhappiness with his trial counsel nor his complaints about the frequency of communication between them equate to good cause for substitution. Therefore, the trial court's decision not to grant defendant's request for new trial counsel was not an abuse of discretion and defendant is not entitled to relief.

## IV. RELEVANT EVIDENCE

Defendant argues that text messages between him and Angela were unfairly prejudicial and irrelevant and should have been excluded because they were character attacks on defendant. We disagree.

"The decision whether to admit evidence is within the trial court's discretion; this Court only reverses such decisions where there is an abuse of discretion." *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999). Preliminary questions of law, such as whether a rule of evidence or statute precludes admissibility of evidence, are reviewed de novo. *Id*.

Under MRE 401,[2] relevant evidence means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Under MRE 402, relevant evidence is generally admissible. Under MRE 403, relevant evidence may be excluded if its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *People v Mardlin*, 487 Mich 609, 627; 790 NW2d 607 (2010) (quotation marks and citation omitted). Prejudicial evidence is not prohibited by MRE 403, rather, only unfairly prejudicial evidence may be excluded. *Id*. Under MRE 404(b)(1):

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be

---

[2] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. This opinion relies on the versions of MRE 401, 402, 403, and 404 in effect at the time this matter was decided by the trial court. The amended rules do not differ substantively from the rules cited in this opinion.

admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

Defendant argues the text messages between him and Angela, specifically the message from Angela referencing her talking to his parole officer and the message from defendant (pretending to be his daughter) referencing defendant going back to prison, were irrelevant and unfairly prejudicial and violate MRE 404(b)(1). However, neither text message was introduced to show proof of any crime or wrongful act. Instead, the text messages were admitted to prove intent, motive, and identification of defendant as the shooter, in context with the rest of the text messages that were admitted. These text messages, and the others that were admitted at trial, were highly relevant to establishing defendant's motive for shooting Willie, proving defendant had threatened both Angela and Willie and intended to hurt them, and that defendant was the shooter.

The text message from Angela referencing defendant's parole officer was a direct reply to a text from defendant that said he was going to beat both Angela and Willie and would do his "worst" to them the next time he saw them. Angela's message showed that defendant was angry with her because he thought she had contacted his parole officer, which provided evidence of defendant's motive for attacking her and Willie, who he would use to hurt Angela. The second text message at issue, where defendant himself references how he was "acting like he's trying to go back to prison" helps prove defendant's intent to commit a crime that would send him back to prison and proves identification of defendant as the shooter for the same reason. The text messages did not create any unfair prejudice and were highly relevant to the charged crimes. The identity of the shooter was a critical issue at trial. These messages provided important context and clarity to defendant's intent to harm Willie. Therefore, the trial court did not abuse its discretion when admitting the text messages, and defendant is not entitled to relief.

## V. IMPARTIAL JURY

Defendant argues he was deprived of his right to an impartial jury because there were no African-Americans in his jury pool and, therefore, his jury pool was not drawn from a fair cross section of the community.[3] We disagree.

"[T]o properly preserve a challenge to the jury array, a party must raise this issue before the jury is empaneled and sworn." *People v McKinney*, 258 Mich App 157, 161; 670 NW2d 254 (2003). Defendant made no formal objection regarding the jury pool; instead defense counsel simply stated he wanted to "put it on the record" that there were no African-Americans in defendant's jury pool. Therefore, this issue is not preserved.

---

[3] This Court denied defendant's motion to remand for an evidentiary hearing on this issue. *People v Williams*, unpublished order of the Court of Appeals, entered April 12, 2024 (Docket No. 362704).

Unpreserved issues regarding whether a jury is chosen from a fair cross section of the community are reviewed for plain error affecting a defendant's substantial rights. *People v Serges*, ___ Mich App ___; ___ NW3d ___ (2024) (Docket No. 355554); slip op at 21. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. at ___; slip op at 5 (quotation marks and citation omitted). "To establish that a defendant's substantial rights were affected, there must be a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. at ___; slip op at 5 (quotation marks and citation omitted). "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at ___; slip op at 5 (quotation marks and citation omitted).

"A defendant has the right to be tried by an impartial jury drawn from a fair cross section of the community." *Id*. at ___; slip op at 21 (quotation marks and citation omitted). To make a prima facie case of a violation of this right, which is afforded under the Sixth Amendment, a defendant must show:

> (1) that the group alleged to be excluded is a "distinctive" group in the community;
> (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process. [*Id*. at ___; slip op at 21, quoting *Duren v Missouri*, 493 US 357, 364; 99 S Ct 664; 58 L Ed 2d 579 (1979) (quotation marks omitted).]

The parties agree that African-Americans constitute a distinctive group. Defendant argues the lack of African-Americans from his jury pool was a result of systematic exclusion, but fails to provide any evidence to support this claim. To satisfy the second prong of the *Duren* analysis, a defendant must prove " 'that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community[.]' " *Serges*, ___ Mich App at ___; slip op at 22 (alteration in original), quoting *People v Bryant*, 491 Mich 575, 597; 822 NW2d 124 (2012), quoting *Duren*, 439 US at 364. To analyze the second prong, "a court must examine the composition of jury pools and venires over time using the most reliable data available to determine whether representation is fair and reasonable." *Bryant*, 491 Mich at 599-600 (emphasis omitted).

Here, the trial court noted that Washtenaw County jury pools are chosen at random from registered voter lists[4] and that not having an African-American as part of the jury pool was unusual. The parties appear to agree the lack of African-American prospective jurors was unusual. Defendant moved for an evidentiary hearing on this issue. But even when such a hearing is denied,

---

[4] Defendant disputes the trial court's statement that the court draws prospective jurors from voter rolls, arguing that the court instead draws prospective jurors from driver's license records. He does not argue that this results in an unfair or unreasonable exclusion of groups of prospective jurors.

a defendant is still required to proffer some evidence supporting the claim of unfair and unreasonable representation in jury pools. See, e.g., *Serges*, ___ Mich App at ___; slip op at 22 (where the trial court denied the defendant's motion for an evidentiary hearing, and the defendant cited news articles, academic research, law review articles, and public surveys to support his claim). Here, defendant's burden is even higher considering that the trial court and the parties appeared to acknowledge that this jury pool was an anomaly for Washtenaw County. Given the complete lack of evidence to support his claim, defendant failed to make a prima facie case that his right to an impartial jury drawn from a fair cross section of the community was violated. Therefore, defendant is not entitled to relief.

## VI. CONCLUSION

In Docket No. 368171, the trial court's order vacating defendant's convictions and sentences, and reinstating defendant's plea offer, is reversed. In Docket No. 362704, defendant's convictions and sentences are affirmed. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Kathleen Jansen
/s/ Noah P. Hood