*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

V

RONALD ANTOINE GRAY,

Defendant-Appellant.

UNPUBLISHED
May 07, 2026
8:52 AM

No. 363752
Wayne Circuit Court
LC No. 20-002195-01-FC

Before: BAZZI, P.J., and BOONSTRA and SWARTZLE, JJ.

PER CURIAM.

Defendant, Ronald Antoine Gray, appeals as of right his jury trial conviction of one count of second-degree murder, MCL 750.317; two counts of assault with intent to do great bodily harm (AWIGBH), MCL 750.84; one count of felon in possession of a firearm (felon-in-possession), MCL 750.224f; and four counts of carrying a firearm while committing a felony, second offense (felony-firearm), MCL 750.227b.[1] Gray was sentenced as a fourth-offense habitual offender, MCL 769.12, to 45 to 50 years' incarceration for the second-degree murder conviction, 20 to 30 years' incarceration for each of the AWIGBH convictions, 5 to 10 years' incarceration for the felon-in-possession conviction, and five years' incarceration for all four felony-firearm convictions. We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

On February 22, 2020, Kevin Williams hosted a barbecue at his home in Detroit, Michigan. Charles Smith, LaTonya McKinney, and Gray were in attendance. At some point in the night, Gray and Williams began arguing. Smith and McKinney testified that Gray was the instigator, while Gray testified that Williams started the fight. The two exchanged blows and were in close quarters when one pulled out a gun. Smith and McKinney testified that Gray pulled out the gun, while Gray testified that Williams had the gun. Gray testified as to getting hold of the gun during

---

[1] Gray was charged with first-degree premeditated murder, MCL 750.316(1)(a); and assault with intent to murder, MCL 750.83; but was convicted of the lesser included offenses.

the struggle and intentionally firing on Williams before fleeing. Smith testified that Gray reached behind his back, drew a gun, and then fired. Williams passed away as a result of his injuries. McKinney and Smith were both shot in the fight and survived with injuries.

At trial, jury instructions were given on self-defense in regard to the homicide, the duty to retreat, and self-defense in regard to possession of a firearm. Trial counsel objected to the instructions on the duty to retreat. The trial court did not give jury instructions on accident, voluntary manslaughter as a lesser included offense of murder, and self-defense for felony-firearm. Gray was convicted and sentenced as provided above. Gray's appellate counsel subsequently moved for a new trial or a *Ginther*[2] hearing, alleging ineffective assistance of counsel. A *Ginther* hearing was held. The trial court found that trial counsel had provided effective assistance of counsel. This appeal followed.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Gray argues that his trial counsel was ineffective for his selection of jury instructions, failure to call additional experts, and failure to object to an in-court identification. We disagree.

"The question whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). Clear error has occurred when this Court has a "definite and firm conviction" that the trial court erred. *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014) (quotation marks and citation omitted).

The Constitutions of the United States and Michigan guarantee effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20. To prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate "that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 52. A reasonable probability is one that undermines confidence in the result of the trial. *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). The defendant must identify specific actions by their counsel that constitute ineffective assistance. *Id*. at 690. Counsel is presumed to be effective. *Id*. The defendant bears the burden of proving any deficiency of counsel. *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018).

Counsel is given wide discretion in matters of strategy, and it is presumed that counsel's actions are based on a sound strategy. *Strickland*, 466 US at 689-690. This Court should not "substitute [its] judgment for that of counsel on matters of trial strategy, nor will we use the benefit of hindsight when assessing counsel's competence." *People v Loew*, 340 Mich App 100, 120; 985 NW2d 255 (2022) (alteration in original; quotation marks and citation omitted). Strategic decisions of counsel still must be objectively reasonable. *Trakhtenberg*, 493 Mich at 52.

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

## A. JURY INSTRUCTIONS

"Trial counsel's failure to request a jury instruction may constitute an unreasonably deficient level of performance." *People v Yeager*, 511 Mich 478, 490; 999 NW2d 490 (2023). Criminal defendants have the right to a properly instructed jury. *People v Ogilvie*, 341 Mich App 28, 34; 989 NW2d 250 (2022). Jury instructions must contain all elements of the crimes and should not exclude material issues or defenses supported by evidence. *Id*. at 35. The instructions must clearly present the applicable law. *People v McKinney*, 258 Mich App 157, 162; 670 NW2d 254 (2003). However, reversal is not required even if the instructions were imperfect, so long as they fairly presented the issues and were sufficient to protect the defendant's rights. *People v Fennell*, 260 Mich App 261, 265; 677 NW2d 66 (2004).

Gray argues that his trial counsel was ineffective for not requesting instructions on accident, M Crim JI 7.1 or 7.3a; self-defense in regard to felony-firearm, M Crim JI 11.34c; and voluntary manslaughter, M Crim JI 16.9. The jury instructions on accident are as follows:

(1) The defendant says that [he / she] is not guilty of ___ because ___'s death was accidental. That is, the defendant says that ___ died because [*describe outside force; e.g., "the gun went off as it hit the wall"*].

(2) If the defendant did not mean to [pull the trigger / *(state other action)*] then [he / she] is not guilty of murder. The prosecutor must prove beyond a reasonable doubt that defendant meant to ___. [M Crim JI 7.1.]

The defendant says that [he / she] is not guilty of [*state crime*] because [he / she] did not intend to [*state specific intent required*]. The defendant says that [his /her] conduct was accidental. If the defendant did not intend to [*state specific intent required*], [he / she] is not guilty. The prosecutor must prove beyond a reasonable doubt that the defendant intended to [*state specific intent required*]. [MI Crim JI 7.3a.]

Trial counsel was not ineffective for failing to request jury instructions on accident. Accident was not a defense that was reasonably supported by the evidence. *Ogilvie*, 341 Mich App at 35. Gray explicitly testified that he aimed the gun and intentionally shot Williams. This was discussed by trial counsel, the prosecution, and the trial court, all of whom agreed that accident instructions were not appropriate because they did not align with Gray's testimony. Trial counsel's failure to request jury instructions on accident did not fall below an objective standard of reasonableness because these instructions were not supported by the facts in evidence. *Trakhtenberg*, 493 Mich at 52. Additionally, the "decision to winnow out weaker arguments and focus on those more likely to prevail" does not constitute ineffective assistance. *People v Reed*, 449 Mich 375, 391; 535 NW2d 496 (1995) (opinion by BOYLE, J.). Trial counsel's decision to focus on self-defense, rather than the weaker argument of accident, did not constitute ineffective assistance. *Id*. Further, because the jury instructions on murder explain the element of intent, a finding of the intent required for murder would be inconsistent with the jury finding an accident had occurred. *People v Hawthorne*, 474 Mich 174, 185; 713 NW2d 724 (2006). Thus, any alleged prejudice would be alleviated by the given instructions on first-degree murder.

The jury instructions of self-defense in regard to felony-firearm, in relevant part, are as follows:

> (1) An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she had the legal right to be, with no duty to retreat, if either of the following applies:
>
> (a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual. [M Crim JI 11.34c.]

Trial counsel was not ineffective for failing to request self-defense instructions in regard to felony-firearm. The jury was provided with extensive instructions on self-defense. The trial court specified that these instructions applied to the murder, injuries to Smith and McKinney, and the felon-in-possession offense. It did not specifically state that the self-defense instructions applied to the felony-firearm charges. However, unlike in *People v Goree*, 296 Mich App 293, 304-305; 819 NW2d 82 (2012), the court made no affirmative statement that self-defense did not apply to the felony-firearm offense. Additionally, unlike in *People v Kilgore*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 365881), slip op at 5, there was no mention of a charge to which self-defense did not apply to, such that the jury would question the applicability of self-defense to felony-firearm. *Kilgore* can be further differentiated because the trial counsel in that case admitted that his failure to request felony-firearm self-defense instructions was not a matter of trial strategy. *Id*.

Trial counsel stated during the trial that he did not want M Crim JI 11.34c read because he was concerned that it would be unnecessarily cumulative, was predicated on Gray not engaging in an offense, and focused on less than deadly force. We note that M Crim JI 11.34c makes no mention of less than deadly force. At the *Ginther* hearing, trial counsel stated he had not requested M Crim JI 11.34c because the given self-defense instructions were comprehensive, and he did not want to confuse the jury about whether Gray was engaged in criminal activity at the time of the shooting.

The applicable self-defense law was clearly presented to the jury. *McKinney*, 258 Mich App at 162. Trial counsel's decision to not request felony-firearm self-defense instructions was a matter of strategy which this Court will not second-guess. *Loew*, 340 Mich App at 120. Trial counsel reasonably decided that providing additional self-defense instructions may have been confusing to the jury and introduced new concerns about the criminality of Gray's actions. Trial counsel is not ineffective merely because his strategy was unsuccessful. See *People v Matuszak*, 263 Mich App 42, 61; 687 NW2d 342 (2004). It was not reasonably probable that but for trial counsel's decision not to request an instruction on felony-firearm self-defense, the result of the proceeding would have been different. Gray was convicted of second-degree murder and two counts of AWIGBH, suggesting that the jury did not believe his claim of self-defense. It is unlikely that they would have found self-defense to be an applicable defense only for the felony-firearm charges. A conviction of felony-firearm requires an underlying felony. *People v Moore*, 470 Mich 56, 62; 679 NW2d 41 (2004). In the present case, all of the felony-firearm charges were related to felonies for which Gray claimed self-defense. If the jury had believed that Gray acted in self-

defense, there would be no reason for the jury to convict Gray of felony-firearm because he had not committed the underlying felonies. In light of the foregoing, trial counsel's failure to request self-defense felony-firearm instructions did not fall below an objective standard of reasonableness. *Trakhtenberg*, 493 Mich at 52.

The jury instructions for voluntary manslaughter as a lesser included offense of murder are as follows:

> (1) The crime of murder may be reduced to voluntary manslaughter if the defendant acted out of passion or anger brought about by adequate cause and before the defendant had a reasonable time to calm down. For manslaughter, the following two things must be present:

> (2) First, when defendant acted, [his / her] thinking must be disturbed by emotional excitement to the point that a reasonable person might have acted on impulse, without thinking twice, from passion instead of judgment. This emotional excitement must have been the result of something that would cause a reasonable person to act rashly or on impulse. The law does not say what things are enough to do this. That is for you to decide.

> (3) Second, the killing itself must result from this emotional excitement. The defendant must have acted before a reasonable time had passed to calm down and return to reason. The law does not say how much time is needed. That is for you to decide. The test is whether a reasonable time passed under the circumstances of this case. [M Crim JI 16.9.]

Trial counsel was not ineffective for failing to request instructions on voluntary manslaughter. The trial court stated that Gray had "talked himself out of" voluntary manslaughter when testifying. Trial counsel was clear that his strategy was to focus on Gray's claim of self-defense. He never planned on requesting instructions on voluntary manslaughter. He stated that he was concerned that the jury would compromise on a charge of manslaughter, rather than finding Gray not guilty of murder. As previously noted, while this strategy was unsuccessful, that does not automatically mean trial counsel was ineffective. *Matuszak*, 263 Mich App at 61. There was no evidence that Gray had acted out of emotional excitement, other than fear, which related to self-defense. *Ogilvie*, 341 Mich App at 35. He testified that he had intentionally shot Williams. It was reasonable for trial counsel to not request instructions on voluntary manslaughter when this charge was not supported by the evidence. *Trakhtenberg*, 493 Mich at 52. Even if trial counsel's actions were not objectively reasonable, Gray cannot show that the result of the trial would have been different because the trial court indicated it was unwilling to give voluntary manslaughter instructions and would have correctly refused to give instructions on voluntary manslaughter because it was not reasonably supported by evidence. *Id.*; see also *Ogilvie*, 341 Mich App at 35.

Gray further argues that trial counsel was ineffective because he did not make an argument regarding Gray's duty to retreat. Trial counsel objected to the trial court's instructions on duty to retreat and requested that the jury be instructed again without those instructions. At the *Ginther* hearing, trial counsel acknowledged that he did not object to the duty to retreat instructions before they were given because "[i]t may not have lodged in my memory as a point that I needed to

address, or that I thought I had addressed...." The trial court stated that the instructions on the duty to retreat were appropriate because Gray could have retreated. When testifying, Gray stated that he did not leave Williams's home because he did not want to put his back to Williams, indicating that Gray could have left but chose not to. Though Gray may have preferred trial counsel to object earlier, a belated objection does not fall below an objective standard of reasonableness. *Trakhtenberg*, 493 Mich at 52. Even if trial counsel's failure to object earlier to the duty to retreat instructions fell below an objective standard of reasonableness, Gray cannot show that he was prejudiced by this failure because the trial court indicated that it found the instructions appropriate and thus would have likely given them regardless, and the instructions were reasonably supported by facts in evidence. *Id.*; see also *Ogilvie*, 341 Mich App at 35. Additionally, the provided jury instructions on the duty to retreat explicitly included that they did not apply when a defendant did not feel they could safely retreat. If the jury believed Gray's testimony that he did not believe he could safely retreat, instructions on the duty to retreat would not have defeated his self-defense argument.

Gray also argues that trial counsel should have included an argument as to why Gray did not have a duty to retreat in his closing argument. The contents of trial counsel's closing argument are a matter of trial strategy that this Court does not second-guess. *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). Gray has not overcome the presumption that trial counsel's decision about what to address in closing argument was not sound trial strategy. *Loew*, 340 Mich App at 120. Trial counsel argued that Gray acted in self-defense, which included a claim that Gray did not believe he could safely retreat. Because the trial court stated that the duty to retreat did not apply in such situations, trial counsel's argument for self-defense impliedly addressed the argument that Gray did not have a duty to retreat. Ultimately, Gray has failed to establish trial counsel's selection of jury instructions constituted ineffective assistance.

## B. EXPERT WITNESSES

"An attorney's decision whether to retain witnesses, including expert witnesses, is a matter of trial strategy." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). The failure to call a witness is ineffective assistance of counsel if the defendant can demonstrate "that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 52.

Trial counsel agreed that Gray had suggested calling a scene reconstruction expert, which trial counsel did not do. Calling a scene reconstruction expert would not lead to a reasonable probability that the outcome of the trial would have differed. *Id.* Extensive testimony about the layout of Williams's home was given, and Gray provided a sketch of the layout and identified where people had been standing. Gray presented no evidence to substantiate the claim a scene reconstruction expert could have provided additional information aiding his case.

Gray argues that calling a scene reconstruction expert could have helped to bolster his claim that the gun belonged to Williams and was already at the home. Gray testified that Williams initially had the gun. It is unclear what evidence a scene reconstruction expert could provide to bolster Gray's claim that Williams initially had the gun. Trial counsel did not fall below an objective standard of reasonableness by not calling a scene reconstruction expert. *Id.*; see also

-6-

*Payne*, 285 Mich App at 190. Without any further explanation, Gray's speculation that a scene reconstruction expert could have given favorable testimony does not indicate that the outcome of the trial would have been different. *Trakhtenberg*, 493 Mich at 52.

Similarly, Gray argues that there was an "old bullet" that trial counsel should have followed up on, presumably with some sort of ballistics expert. According to trial counsel, a bullet was allegedly found by Williams's family after the police searched his home. It is unclear if this bullet predated the shooting or was from the shooting. There is no indication in the record that this bullet was tested in any manner. Trial counsel testified that he had not conducted additional research on this bullet because he was focusing on self-defense, rather than contending that Gray did not fire the gun. Additionally, his argument that the gun was already in the house was corroborated by testimony from Jackson, who stated that another bullet had entered the bedroom wall. Trial counsel felt this demonstrated that there had been an earlier shooting. Trial counsel's decision not to call an expert witness to discuss the old bullet was a matter of trial strategy that this Court will not second-guess. *Payne*, 285 Mich App at 190. Even if trial counsel erred in not calling an expert on this matter, because there was already evidence that could have supported the gun being in Williams's home previously, Gray cannot show that the results of the trial would have differed. *Trakhtenberg*, 493 Mich at 52. Additionally, Gray has not provided any evidence that this bullet actually predated the shooting. Because Gray bears the burden to establish the factual basis for his claim of ineffective assistance of counsel, he cannot prevail on this argument. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

## C. IN-COURT IDENTIFICATION

Gray argues that trial counsel should have objected when McKinney was asked to identify Gray at trial. Trial counsel stated that he did not object to McKinney's in-court identification of Gray because his trial strategy was not to argue that Gray was absent from the shooting. Trial counsel had stated in his opening statement that Gray was present, and Gray later testified that he was present. Trial counsel's decision to not object to McKinney's in-court identification was a matter of trial strategy that we will not second-guess. *Strickland*, 466 US at 689-690; *Loew*, 340 Mich App at 120. Even if trial counsel's failure to object fell below an objective standard of reasonableness, Gray cannot demonstrate that the outcome of the trial would have been different, given the additional evidence placing him at the scene of the shooting, a fact he does not now and has never disputed. *Trakhtenberg*, 493 Mich at 52.

## III. JURY INSTRUCTIONS

Gray argues that the trial court erred in giving instructions on duty to retreat and omitting instructions on voluntary manslaughter as a lesser included offense and self-defense for felony-firearm. We disagree.

A claim of instructional error is generally reviewed de novo, but a trial court's determination that a jury instruction is applicable to the case is reviewed for an abuse of discretion. *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007). The trial court has abused its discretion when "it makes a decision that falls outside the range of reasonable and principled outcomes or makes an error of law." *People v Christian*, 510 Mich 52, 75; 987 NW2d 29 (2022) (citation and quotation marks omitted). Gray did not request instructions on voluntary

manslaughter as a lesser included offense of murder or self-defense for felony-firearm. Gray objected to the jury instructions on duty to retreat. Therefore, only the issue of jury instructions regarding duty to retreat is preserved for appeal.

An unpreserved claim of instructional error is reviewed for plain error. *People v Aldrich*, 246 Mich App 101, 125-126; 631 NW2d 67 (2001). Three requirements must be met to establish plain error: an error occurred, the error was clear or obvious, and that error "affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). For an error to affect substantial rights, it generally must have affected the outcome in the lower court. *Id*. This Court may only reverse if the plain error "resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity, or public reputation of juridical proceedings independent of the defendant's innocence." *Id*. (citation and quotation marks omitted; alteration in original).

"Jury instructions are reviewed in their entirety to determine if error requiring reversal occurred." *McKinney*, 258 Mich App at 162. Jury instructions must contain all elements of the crimes the defendant is charged of and should not exclude material issues or defenses supported by evidence. *Ogilvie*, 341 Mich App at 35.

The trial court did not abuse its discretion by providing jury instructions on the duty to retreat. Viewing the evidence in its entirety, there was sufficient evidence that Gray could have retreated as opposed to shooting Williams, Smith, and McKinney. There was no proof that the door to Williams's home was locked. While Gray and Williams were fighting, Gray could have retreated once he had control of the gun, rather than shooting Williams. Gray testified that he did not leave because he did not want to put his back to Williams, suggesting that Gray considered his options and chose not to leave. Additionally, the jury instructions on the duty to retreat explicitly state that they do not apply when a defendant does not feel they can safely retreat. Because the trial court's decision to give instructions on the duty to retreat was within the realm of reasonable and principled outcomes, it did not abuse its discretion. *Christian*, 510 Mich at 75.

The trial court did not plainly err by not giving jury instructions on voluntary manslaughter as a lesser offense and self-defense for felony-firearm. As previously discussed, when considering the jury instructions as a whole, the self-defense instructions given by the trial court contained the relevant information regarding Gray's claim of self-defense. *McKinney*, 258 Mich App at 162. The jury was not precluded from applying the claim of self-defense to Gray's felony-firearm charge. *Ogilvie*, 341 Mich App at 35. Gray has not established that the trial court erred by not giving felony-firearm self-defense instructions. Additionally, Gray has not established that the trial court's decision to not give instructions on voluntary manslaughter was plainly erroneous. Further, a charge of voluntary manslaughter was not supported by the evidence because there was no indication that Gray acted in the heat of the moment. Therefore, the trial court did not plainly err when deciding not to give voluntary manslaughter instructions. *Id*.

IV. IN-COURT IDENTIFICATION

Gray argues that his due-process rights were violated by McKinney's in-court identification. We disagree.

To preserve an issue of in-court identification, the defendant must have objected to the identification. *Posey*, 512 Mich at 332 (opinion by BOLDEN, J.); *id*. at 361 (CAVANAGH, J., concurring in part and concurring in the judgment); *id*. at 390 (WELCH, J., concurring in part, dissenting in part, and concurring in the judgment). Because defendant did not object to McKinney's in-court identification of him, this issue is unpreserved. *Id*. (opinion by BOLDEN, J.); *id*. at 361 (CAVANAGH, J., concurring in part and concurring in the judgment); *id*. at 390 (WELCH, J., concurring in part, dissenting in part, and concurring in the judgment).

The procedure for obtaining identification evidence is a question of due process. *Id*. at 331 (opinion by BOLDEN, J.); *id*. at 361 (CAVANAGH, J., concurring in part and concurring in the judgment); *id*. at 390 (WELCH, J., concurring in part, dissenting in part, and concurring in the judgment). "Unpreserved constitutional questions are reviewed for plain error affecting defendant's substantial rights." *Id*. at 332 (opinion by BOLDEN, J.); *id*. at 361 (CAVANAGH, J., concurring in part and concurring in the judgment); *id*. at 390 (WELCH, J., concurring in part, dissenting in part, and concurring in the judgment). Three requirements must be met to establish plain error: an error occurred, the error was clear or obvious, and that error "affected substantial rights." *Carines*, 460 Mich at 763. For an error to affect substantial rights, it generally must have affected the outcome in the lower court. *Id*. This Court may only reverse if the plain error "resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity, or public reputation of juridical proceedings independent of the defendant's innocence." *Id*. (citation and quotation marks omitted; alteration in original).

When there is no pretrial identification of the defendant by a particular witness, "reliability is the linchpin in determining the admissibility of identification testimony...." *Posey*, 512 Mich at 337 (citation and quotation marks omitted) (opinion by BOLDEN, J.); *id*. at 361 (CAVANAGH, J., concurring in part and concurring in the judgment); *id*. at 390 (WELCH, J., concurring in part, dissenting in part, and concurring in the judgment). To determine the reliability, eight factors related to an independent basis for the identification should be considered:

1. Prior relationship with or knowledge of the defendant.

2. The opportunity to observe the offense. This includes such factors as length of time of the observation, lighting, noise, or other factor[s] affecting sensory perception and proximity to the alleged criminal act.

3. Length of time between the offense and the disputed identification.

4. Accuracy or discrepancies in the pre-lineup or show-up description and defendant's actual description.

5. Any previous proper identification or failure to identify the defendant.

6. Any identification prior to lineup or showup of another person as defendant.

7. ... [T]he nature of the alleged offense and the physical and psychological state of the victim. In critical situations perception will become distorted and any strong emotion (as opposed to mildly emotional experiences) will affect not

only what and how much we perceive, but also will affect our memory of what occurred.

Factors such as fatigue, nervous exhaustion, alcohol and drugs, and age and intelligence of the witness are obviously relevant.

8. Any idiosyncratic or special features of defendant. [*People v Gray*, 457 Mich 107, 116; 577 NW2d 92 (1998) (citation and quotation marks omitted; alterations in original).]

The prosecution erred in eliciting McKinney's identification of Gray because it was unreliable. *Carines*, 460 Mich at 763. McKinney did not have any relationship with Gray prior to the shooting. *Gray*, 457 Mich at 116. McKinney was able to observe the shooting, but her perception was likely complicated by the fact that she was intoxicated and shot at some point, which caused her to lose consciousness. McKinney was shot in the head, which may have impacted her memory and perception abilities. *Id*. Approximately two years had passed between the shooting and McKinney's identification. *Id*. At trial, McKinney described Gray as approximately as tall as Williams but stockier, which was accurate. However, there was no indication that she accurately described Gray before trial. *Id*. McKinney was unable to identify Gray in a photographic lineup but also did not identify anyone else as the Gray. *Id*. Witnessing the shooting of two people and being shot in the head likely had a strong psychological impact on McKinney, which could have affected her memory of the shooting. *Id*. Additionally, as mentioned, she was intoxicated at the time of the shooting. *Id*. There was no evidence that Gray had "idiosyncratic or special features" that would affect McKinney's ability to identify him. *Id*. Considering these eight factors as a whole, McKinney's identification of Gray was of questionable reliability. Therefore, it was an obvious error to allow her in-court identification of Gray. *Carines*, 460 Mich at 763.

However, Gray has failed to show prejudice requiring reversal. *Id*. Smith identified Gray at trial, trial counsel stated in his opening statement that Gray was at Williams's home, and Gray testified that he was present at Williams's home when the shooting occurred. There was circumstantial evidence placing Gray at Williams's home, including his cell phone being used to call for a ride a few blocks from Williams's home shortly after the shooting, video footage of Gray and Williams at the store together the day of the shooting, and Gray's DNA being highly likely to be some of the DNA found under Williams's fingernails.

Gray claims that McKinney's identification may have caused him to testify that he was present when he otherwise would not have. He insinuates that any first time in-court identification should require reversal, ignoring the fact that the Michigan Supreme Court held that the in-court identification in *Posey* did not require reversal. *Posey*, 512 Mich at 342 (opinion by BOLDEN, J.); *id*. at 361 (CAVANAGH, J., concurring in part and concurring in the judgment); *id*. at 390 (WELCH, J., concurring in part, dissenting in part, and concurring in the judgment). Gray's argument that he may not have testified if not for McKinney's identification is unpersuasive when considering the amount of additional evidence that supported his presence at the shooting. Additionally, Gray's claim of self-defense was heavily reliant on his testimony that he feared for his life when shooting Williams. It is unclear that there was any other evidence in support of Gray's self-defense claim, which trial counsel testified was the planned primary defense. Even if it was plain error to

-10-

allow McKinney's identification of Gray, Gray cannot demonstrate that he was prejudiced by this identification. *Carines*, 460 Mich at 763. Therefore, this was not a reversible error. *Id*.

## V. CUMULATIVE ERROR

Gray argues that the cumulative errors that occurred denied him a fair trial. We disagree.

A cumulative error argument is reviewed to "determine if the combination of alleged errors denied defendant a fair trial." *Dobek*, 274 Mich App at 106. "[T]he cumulative effect of several minor errors may warrant reversal where the individual errors would not." *People v Unger*, 278 Mich App 210, 261; 749 NW2d 272 (2008) (quotation marks and citation omitted). To reverse on the ground of cumulative error, "the effect of the errors must [be] seriously prejudicial in order to warrant a finding that defendant was denied a fair trial." *Id*. (quotation marks and citation omitted; alternation in original). For a new trial to be granted, the cumulative impact of the errors must undermine "confidence in the reliability of the verdict... " *Dobek*, 274 Mich App at 106.

Gray has failed to demonstrate ineffective assistance of counsel or that the trial court erred in instructing the jury. Though the prosecution erred in soliciting McKinney's in-court identification of Gray, Gray has not demonstrated any resulting prejudice. "When there is only one error of consequence that does not individually warrant a new trial, a new trial is not warranted on the basis of cumulative error." *People v Lowrey*, 342 Mich App 99, 120; 993 NW2d 62 (2022). Because Gray has not identified errors that undermine our confidence in the reliability of the trial court's verdict, appellate relief for cumulative error is not warranted. *Id*.; *Unger*, 278 Mich App at 261.

Affirmed.

/s/ Mariam S. Bazzi
/s/ Mark T. Boonstra
/s/ Brock A. Swartzle